### A02A1800. 4WD PARTS CENTER, INC. v. MACKENDRICK.
(579 SE2d 772)

PHIPPS, Judge.

Bryan Mackendrick sued 4WD Parts Center, Inc. (4WD), a company that installed custom modifications on four-wheel-drive vehicles, and Kevin St. Amant, the company's president, part-owner, and operator. Mackendrick alleged that the defendants had breached their contract to modify his truck and had converted his truck to their use. The defendants counterclaimed, alleging, among other things, that it was Mackendrick who had breached their contract. After a bench trial, the court entered judgment in favor of Mackendrick and against 4WD.[1] 4WD appeals, contesting the amount of

---

[1] The court dismissed St. Amant from the case.

damages and the award of attorney fees. The evidence authorized the amount of damages and the imposition of attorney fees, but not the amount of attorney fees. Accordingly, we affirm in part, vacate the attorney fees award, and remand for a hearing on attorney fees.

Evidence at trial showed that in December 1997, Mackendrick met with St. Amant and requested various customizations to his 1972 Cheyenne Chevrolet four-wheel-drive truck. According to Mackendrick, because he considered the "original estimate" or "quote" of $22,000 excessive, he and St. Amant agreed that the installation of one-ton military axles, which totaled approximately $10,000, would not be done. Mackendrick testified, "[St. Amant] told me that if we wanted to do that, that we could make payments on it while he was doing the rest of the work to the vehicle and we had cured enough money to purchase those." Thus, Mackendrick paid $12,000 to 4WD, and St. Amant advised Mackendrick that the work would be completed within three to four months. Mackendrick testified that when he left his "collector's truck" at 4WD on January 5, 1998, it had no mechanical problems.

Beginning in March, Mackendrick repeatedly called 4WD to determine the truck's status, but was told only that "they were working on it," that the truck "looked good," and that "it would be a little while longer." In August, Mackendrick went to 4WD and saw his truck sitting outside. It had been "stripped." Some of his truck's parts were for sale on the showroom floor. He could not discern that any of the requested customization had been done. He complained to St. Amant and demanded his truck. St. Amant told Mackendrick that he had "$18,000 worth of interest" in the truck. He refused to release it and called the police. Mackendrick left the premises, advising that he would resort to legal action. St. Amant responded, "Go ahead, you are wasting your money." In April 2000, Mackendrick filed the complaint underlying this action. Over a year later, in July 2001, St. Amant contacted Mackendrick to offer a settlement.

But Mackendrick did not receive his truck from 4WD until October 24, 2001. The body of the truck had rusted. Many of its original parts were missing. For many reasons, the motor was not usable. The brakes were inoperable. It had to be towed from the premises, and the towing wrecker almost lost the bed of the truck because it had been unbolted from the bed assembly. Mackendrick presented evidence that the only work that had been done to the truck was "some plates [had been] welded on the rear lead shackles," but it did not appear that the work was related to the requested customization.

The defendants presented their account of the matter. St. Amant testified that the initial contract price was actually $22,000, and that the $12,000 Mackendrick paid was only a deposit. When 4WD received the truck in January 1998, 4WD brought the truck inside

and worked on it for two months.[2] Mackendrick did not pay more money, despite being asked to do so. And the cost of ordered parts, received parts, labor performed, and other expenses exceeded the initial $12,000 paid. Therefore, by mid-March, 4WD stopped working on Mackendrick's truck. In April 1998, the truck was moved outside, where it sat until it was towed away three years later. St. Amant claimed that the truck had not been released to Mackendrick in August 1998 because of the outstanding balance. He further claimed that many of the truck's original parts had been removed to facilitate rebuilding the truck. And as to the whereabouts of the ordered parts necessary to customize the truck as requested, St. Amant stated that some were never shipped because no deposits had been forwarded to the suppliers; some had been installed on Mackendrick's truck; and others were in the company's storage areas or on the showroom floor on display.

In ruling in Mackendrick's favor, the trial court awarded him $12,000 on the breach of contract claim, $14,000 for loss of the value of the vehicle, $4,320 prejudgment interest, and $6,000 in attorney fees. It further allowed Mackendrick to retain the truck and 4WD to retain any parts, whether ordered for or removed from the truck, that were then in its possession.

1. (a) 4WD contends that the award of damages in the amount of $14,000 for loss of value of the truck was not supported by the evidence because Mackendrick failed to establish a foundation for his opinion of the truck's fair market value before and after it was in 4WD's possession. Where, as here, a party sues for damages for conversion and the property has been returned before trial, the party may be awarded the amount of diminution in fair market value of the property during the time period between the alleged conversion and the property's return.[3] The trial court's award to Mackendrick of $14,000 for his truck was based on its finding that the truck had been worth $15,000 when driven to 4WD and was worth $1,000 when towed away.

Mackendrick presented evidence of the fair market value of the truck through the testimony of himself and others. For lay opinion to be probative of fair market value, it "must be based upon a foundation that the witness has some knowledge, experience or familiarity

---

[2] St. Amant also testified that he then notified Mackendrick that, based on an oral agreement for *additional* upgrades totaling $17,000, Mackendrick needed to pay an extra deposit of $6,000.

[3] See *Campbell v. Bausch*, 195 Ga. App. 791, 792 (1) (395 SE2d 267) (1990); see also *Lamb v. Salvage Disposal Co. of Ga.*, 244 Ga. App. 193, 196 (535 SE2d 258) (2000) (physical precedent only); *Walker v. Crane*, 243 Ga. App. 838, 841 (2) (534 SE2d 520) (2000).

with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion."[4]

Mackendrick had experience in building "high horsepower motors" and had also "built a truck." He had researched various older model trucks for restoration for three or four months before selecting the truck at issue in this case. After purchasing it, he "had done some additional stuff to it." Based on what he encountered over several months of searching and his knowledge of motors, he stated that the fair market value of his truck was "roughly $15,000" when he drove it to 4WD and that it was worth less than $1,000 when it was towed away.

In addition, Mackendrick presented the testimony of Mark Franklin, who had 17 years experience in "general repair and performance work" on automobiles, including four-wheel-drive vehicles. Franklin estimated that before Mackendrick's truck was taken to 4WD, it was worth $15,000 to $20,000, based on "everything that was done to it, lifted up, the wheels and tires, the shape and condition of the body and the engine." After Mackendrick regained possession of it, Franklin testified, the truck was "not usable at all." Mackendrick also presented the testimony of Joseph Beatty, who had purchased four trucks. Beatty estimated that before Mackendrick's truck was taken to 4WD, it was worth $10,000 to $15,000.

Contrary to 4WD's contention, we find that the court's award was within the range of sufficient probative evidence as to the fair market value of the truck before and after it was in 4WD's possession.

(b) 4WD contends that the trial court's award of $12,000, based on its finding that 4WD had breached its contract, resulted in an impermissible "double recovery" for Mackendrick.

It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of the contract to avoid harming him. Such duties may arise from statute, or flow from relations created by contract, express or implied. The violation of any such specific duty, accompanied with damage, gives a right of action. In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relation the breach must be shown to

---

[4] (Citations and punctuation omitted.) *Dixon v. Williams*, 177 Ga. App. 702, 704 (340 SE2d 286) (1986).

have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself.[5]

The evidence adduced at trial authorized the court's finding that 4WD had breached the contract, under which it had received $12,000. It also authorized the court to find that, apart from failing to perform its obligation under the contract, 4WD had breached a duty imposed by law not to cause the diminution of the truck's value. OCGA § 44-12-77 provides: "The relationship of the owner of an automobile and the owner of the garage in which the automobile is stored is that of bailor and bailee. The bailee is bound to use ordinary care for the safekeeping and return of the automobile."[6] And if a bailee "puts the thing to a different use than is specified in the contract, the bailor may bring an action as for a conversion. . . ."[7] Here, because 4WD's breach of its duty to safekeep Mackendrick's truck gave rise to a separate cause of action for conversion, the trial court did not err in awarding Mackendrick additional damages for the loss of value to his truck.[8]

2. 4WD contests Mackendrick's award of attorney fees under OCGA § 13-6-11, which allows such fees "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."

(a) 4WD now complains that Mackendrick did not specially plead for that award. But when Mackendrick's attorney offered evidence at trial concerning the attorney fees earned in this case, no objection was made. Rather, defense counsel cross-examined Mackendrick's attorney about his rates and the number of hours he had worked on the case. Because the issue of attorney fees was litigated without objection from 4WD, the pleadings must be treated as if amended to include a plea and prayer for them.[9]

---

[5] (Citations and punctuation omitted.) *Waldrip v. Voyles*, 201 Ga. App. 592, 593 (1) (411 SE2d 765) (1991); see also *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 188 (5) (450 SE2d 452) (1994), quoting *Waldrip*, supra.

[6] See *Turner v. Jackson*, 157 Ga. App. 31, 33 (276 SE2d 92) (1981); *Bunn v. Broadway Parking Center*, 116 Ga. 85 (1) (156 SE2d 464) (1967).

[7] OCGA § 44-12-65.

[8] See *Long v. Marion*, 182 Ga. App. 361, 366 (5) (355 SE2d 711) (1987) (physical precedent only); compare *Nalley Northside*, supra (automobile company's breach of contract was the tort of negligent performance of duties arising by contract, and there was no showing that the company, in addition to breaching contract to repair vehicle, had also improperly retained and "stripped" the vehicle).

[9] See generally *Privitera v. Addison*, 190 Ga. App. 102, 105-107 (6) (378 SE2d 312) (1989); *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 275 (7) (329 SE2d 900) (1985) (amendment is proper under OCGA § 9-11-15 (b), if the issue of attorney fees had been tried by express or implied consent of the parties); compare *Eastern Foods v. Forman*, 202 Ga. App. 347, 348 (1) (415 SE2d 1) (1991).

(b) 4WD complains that the trial court refused to hear evidence on its claim for attorney fees pursuant to OCGA § 13-6-11. Not only does this argument impermissibly expand upon 4WD's enumeration of errors, but it also lacks merit. Attorney fees are not recoverable under OCGA § 13-6-11 where there is no award of damages or other relief on any underlying claim.[10] Because 4WD prevailed on none of its counterclaims, it was not entitled to attorney fees.

(c) 4WD contends that the evidence did not support an award of attorney fees. We will affirm an award of attorney fees under OCGA § 13-6-11 if there is any evidence to support it.[11]

Here, Mackendrick did not allege bad faith. The trial court based the award on its finding that 4WD had been stubbornly litigious and had caused Mackendrick unnecessary trouble and expense. Where "bad faith is not an issue and the basis for attorney fees is either stubborn litigiousness or unnecessary trouble and expense, there is not any evidence to support an award pursuant to OCGA § 13-6-11 if a bona fide controversy clearly exists between the parties. [Cit.]"[12] Thus, attorney fees were not authorized if the evidence showed that "a genuine dispute exists — whether of law or fact, on liability or amount of damages, or on any comparable issue."[13]

4WD argues that the clear existence of a bona fide controversy between it and Mackendrick precluded an award of attorney fees in this case. We agree that the evidence was in conflict as to which party first breached the contract. Mackendrick presented evidence that he had performed in full by paying $12,000 to 4WD, but that the company then failed to perform the contracted work. 4WD, on the other hand, presented evidence that the initial contract price was $22,000.[14] It points to the written December 1997 "quote" of $22,000, which Mackendrick admitted signing. 4WD claimed it stopped working on Mackendrick's truck because Mackendrick refused to pay the next deposit. With the evidence showing a genuine dispute, attorney fees were not authorized for prosecuting the breach of contract claim.[15]

However, the evidence did authorize an award of attorney fees to Mackendrick for prosecuting the claim to recover for the loss of value to his vehicle. It is uncontroverted that during the pendency of the bailment, there was destruction or deterioration to Mackendrick's truck. 4WD's assertion that Mackendrick owed it money was not a

---

[10] *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (2) (475 SE2d 601) (1996).

[11] *Morris v. Savannah Valley Realty*, 233 Ga. App. 762, 764 (3) (505 SE2d 259) (1998).

[12] Id.

[13] (Citations and punctuation omitted.) *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746, 747 (1) (365 SE2d 540) (1988).

[14] This figure excludes upgrades that Mackendrick allegedly later requested.

[15] See *Backus Cadillac-Pontiac*, supra.

viable defense for its failure to keep the truck safe. Rather than safe-keeping the truck, 4WD took an attitude of "so, sue me" and showed no willingness to resolve the matter until a year after Mackendrick filed suit. 4WD has failed to support its claim that a bona fide controversy existed between it and Mackendrick regarding the conversion claim. Because there was some evidence to support the trial court's award of attorney fees, attorney fees related to that claim were authorized.

(d) 4WD contends that the attorney fees award was not authorized because there was insufficient evidence that the fees were reasonable. "An award of attorney fees is unauthorized if [Mackendrick] failed to prove the actual costs of [his attorney] and the reasonableness of those costs."[16]

Mackendrick's attorney stated in his place the number of years he had been sworn to practice law, his billing rate, the number of hours already spent on the case, and the number of unbilled, but anticipated hours required by the case. He further stated that the incurred fees were reasonable. However, because he offered no billing records or any other evidence describing, with any particularity, how he spent his time, the court's award of $6,000 was improperly based on guesswork.[17]

Accordingly, we vacate the award of attorney fees and remand the case to the trial court to conduct an evidentiary hearing on the amount of reasonable attorney fees based on the conversion claim.[18]

*Judgment affirmed in part, vacated in part and remanded with direction. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 18, 2003.

*Weinstock & Scavo, Louis R. Cohan, Jennifer E. Butler*, for appellant.

*Glyndon C. Pruitt*, for appellee.

---

[16] (Citations and punctuation omitted.) *Citadel Corp. v. All-South Subcontractors*, 217 Ga. App. 736, 737 (1) (458 SE2d 711) (1995).

[17] See *Paul v. Destito*, 250 Ga. App. 631, 642 (9) (550 SE2d 739) (2001).

[18] See *United Cos. Lending*, supra; *Destito*, supra.