**In re LJL TRUCK CENTER, INC., Debtor.**

**No. 01–51665–JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

April 17, 2003.

George H. McCallum, Ward Stone, Jr., Macon, GA, for Debtor.

Fred S. Clark, Savannah, GA, for James Tanley and Joe Matusek Trucking, Inc.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on LJL Truck Center, Inc.'s Objection to Allowance of Claim of James Tanley and Joe Matusek Trucking, Inc. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(B). After considering the pleadings, the evidence, and the applicable authorities, the Court will disallow the claim based on the following findings of fact and conclusions of law entered in con-

formance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

In 1999, James Tanley was employed in the trucking business. He owned his truck, a 1998 International 9400. On December 21, 1999, the truck was involved in an automobile accident in Brunswick, Georgia, that caused serious damage to its front end. Mr. Tanley was driving the truck at the time of the accident and was determined to be at fault in the accident.

Mr. Tanley asked his long-time acquaintance Scott Horn, an automobile mechanic, to examine the truck. Mr. Horn advised Mr. Tanley at that time that the truck appeared to be totaled and unrepairable. Mr. Tanley contacted his insurance company, which instructed him to take the truck to the nearest International dealer for repairs. As a result, Mr. Tanley had the truck towed to LJL's facility in Savannah, Georgia.

LJL prepared an estimate of repairs without any input from Mr. Tanley. An adjuster from Mr. Tanley's insurance company inspected the truck and authorized the repairs recommended by LJL. An invoice dated December 29, 1999, listed the work to be completed, including repairing damage to the bumper, the side skirts, the aluminum front wheel, moldings, and panels. The repairs were completed on February 14, 2000. Immediately after releasing the truck to Mr. Tanley, a fuel filter clog was detected. LJL replaced the fuel filter, and Mr. Tanley picked up the truck on February 16, 2000. He drove the truck from Savannah to Columbus, Ohio, to pick up a load and noticed that the truck was pulling to the left. He then drove the truck to Belmont, Texas, to deliver the load. During that trip, he noticed the windshields were leaking. After reloading the truck in Orange, Texas, Mr. Tanley returned to Ohio, where he discovered the truck had an oil leak.

Mr. Tanley took the truck to a nearby service station, which replaced the oil filter but declined to make any further repairs. Mr. Tanley asked Mr. Horn to take another look at the truck. Mr. Horn again advised Mr. Tanley that he believed the truck was unrepairable. Mr. Tanley contacted LJL, which told him to return the truck for additional repairs. Because Mr. Horn believed the truck to be too dangerous to drive, Mr. Tanley took the truck to a closer International dealer in Wheeling, West Virginia, which inspected the truck and found that a spring was out of place, causing damage to the oil filter. The shop replaced the front engine insulators, bolts, and washers, but Mr. Tanley remained unsatisfied. Therefore, in early March, LJL had the truck towed back to its facility in Savannah for additional repairs.

The additional repairs fixed newly discovered damages not evident during the first inspection and estimate; they were not repairs to correct the previous work. The additional work included repairs to the bell housing, fan blade, pilot bearing, engine supports, and engine seal. As standard practice in the collision repair business, Mr. Tanley's insurance company approved and paid for the supplemental repairs.

Mr. Tanley picked up the truck on April 29, 2000, and complained of continuing problems related to the steering mechanism and oil filter. On June 27, 2000, Mr. Tanley and Joe Matusek Trucking (the "Creditors") filed a complaint against LJL in the state court of Chatham County, Georgia, alleging breach of contract and negligent failure to repair. Mr. Tanley subsequently returned the truck to LJL on four occasions-October 27, 2000, November 17, 2000, December 26, 2000, and February 18, 2001–for cosmetic repairs, including

paint, trim pieces, and miscellaneous nuts and bolts. In each case, LJL paid for the additional repairs. Despite Mr. Tanley's continuing complaints about mechanical problems, there is no evidence that LJL ever did work to correct its previous repairs except with respect to painting the truck.

LJL filed for bankruptcy on April 18, 2001. The Creditors filed a proof of claim for $750,000 based on the state court action for general, special, and punitive damages. LJL objected to the claim and seeks to have it disallowed in its entirety. The Court held a hearing on March 11, 2003, at which it heard evidence and legal arguments.

### Conclusions of Law

■ Claims allowance is governed by Section 502[1] of the Bankruptcy Code, which deems claims as allowed in the absence of an objection. If the debtor objects to a claim, the claim will be disallowed if it "would not be enforceable against the debtor outside of bankruptcy." *United States v. Sanford (In re Sanford)*, 979 F.2d 1511, 1513 (11th Cir.1992).

■ A proof of claim is considered prima facie evidence of the validity and the amount of the claim, creating a presumption in favor of allowance. Fed. R. Bankr.P. 3001(f). The burden is on the objecting party to rebut this presumption by presenting " 'facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim.' "

*Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 Collier on Bankruptcy ¶ 502.02 (15th ed.1991)). Once past this threshold challenge, the burden is determined by the applicable nonbankruptcy law. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 21, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000). The law in this case places the burden on the creditor to prove its claim by a preponderance of the evidence. Official Code of Georgia Annotated ("O.C.G.A.") §§ 24–4–1, 24–4–3 (1995).

■ In this case, the proof of claim sets forth an unliquidated claim for $750,000 in damages based on breach of contract and negligent repair that is supported with a copy of the complaint filed in state court. Debtor has presented testimony that it fully completed its obligations to the Creditors and that nothing in its performance would give rise to a tort claim. The Court is satisfied that Debtor has rebutted the presumptive validity of the proof of claim. Thus, the burden shifts to the Creditors to prove their claim by a preponderance of the evidence. In deciding whether the Creditors have met their burden, the Court may "consider all the facts and circumstances of the case" as well as the demeanor and credibility of the witnesses. O.C.G.A. § 24–4–4 (1995).

### *Tort Claim*

■ The facts of this case do not support a negligence claim under Georgia law.

---

**1.** Section 502 provides in relevant part as follows:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine

the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C.A. § 502 (West 1993 & Supp.2003).

Negligence requires a legal duty breached by Debtor that proximately caused damage or loss to the Creditors. *Heston v. Lilly*, 248 Ga.App. 856, 857–58, 546 S.E.2d 816, 818 (2001) (quoting *Bradley Ctr., Inc. v. Wessner*, 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982)). In this case, the Creditors have failed to prove a breach of duty. The Creditors argue that the duty owed to them arose out of the contract between the parties. *See* O.C.G.A. § 51–1–8 (2000) ("Private duties may arise from … relations created by contract …."). It is true that an act that breaches a contract may also constitute a breach of duty in tort " 'if in addition to violating a contract obligation it also violates a duty owed to plaintiff *independent* of the contract.' " *Nalley Northside Chevrolet, Inc. v. Herring*, 215 Ga.App. 185, 188, 450 S.E.2d 452, 456 (1994) (quoting *Waldrip v. Voyles*, 201 Ga. App. 592, 593, 411 S.E.2d 765, 767 (1991)) (emphasis added); *see also 4WD Parts Ctr., Inc., v. Mackendrick*, 260 Ga.App. 340, 343–44, 579 S.E.2d 772, 776–77 (2003). However, " '[t]he mere breach of an ordinary contract does not constitute a tort; and if there is no liability except that arising out of a breach of a purely contractual duty, the action must be in contract, and an action in tort cannot be maintained.' " *Arrow Exterminators, Inc. v. Zurich Amer. Ins. Co.*, 136 F.Supp.2d 1340, 1354 (N.D.Ga.2001) (quoting *Leonard v. Firemen's Ins. Co.*, 100 Ga.App. 434, 435, 111 S.E.2d 773, 775 (1959)).

The Creditors primarily rely on *Frank Graham Co., Inc. v. Graham*, 90 Ga.App. 840, 84 S.E.2d 579 (1954), to support their position that they have an enforceable tort claim. *Graham* arose in the context of an automotive repair. The plaintiff purchased a used car from the defendant that the defendant represented was in good working condition. Within 30 days of the purchase, the brakes began to fail. The plaintiff returned the car to the defendant,

who checked the brake system and brake fluid and assured the plaintiff that the brakes were in working order. In less than a week, the plaintiff was back with additional brake problems. Again the defendant checked the brakes and brake fluid and assured the plaintiff the brake system was in good condition. Two days later, the plaintiff suffered serious injury when he was in an auto accident caused by the complete failure of his car's brakes. *Id.* at 843, 84 S.E.2d at 582.

The court relied on several factors to determine that the defendant breached a duty giving rise to a tort claim: (1) brakes are universally recognized as a vital safety component of a car; (2) the defendant had represented that the car was in good working order when it sold the car to the plaintiff; (3) the defendant twice represented that the brakes were in good working order after having examined them; and (4) despite its representations, the defendant's mechanics had never actually examined the portion of the braking system ultimately determined to be faulty. *Id.* at 844, 84 S.E.2d at 582. These factors together created a duty arising from, but independent of, the contract because the defendant was made aware of a specific safety problem and claimed to have repaired it even though it had not taken any real steps to do so. *Id.*

However, the facts in this case are more similar to those in *Nalley*, in which the plaintiff had brought her car to the defendant for repairs following a collision. She then sought and was awarded damages in both contract and negligence arising from those repairs. 215 Ga.App. at 185, 450 S.E.2d at 453. On appeal, the court noted that the breach of contract and negligent repair claims were one and the same. *Id.* at 188, 450 S.E.2d at 456. Both were based on the repair work performed

by the defendant. But, such a "straight-forward transaction does not create any independent duty." *Id.*

These cases demonstrate that in order to sustain a negligence action separate from a contract action, the breach of duty in question must be independent of the breach of contract even though it may have arisen from the contract. The breach of duty alleged in this case is failure to adequately repair the truck. Thus, it is based on the same act that constitutes the alleged breach of contract, not a breach of an independent duty arising from the contract. As a result, the Creditors do not have an enforceable negligence claim.

### Contract Claim

■■■■■■■ The Creditors have not proven an enforceable contract claim because they have failed to prove the elements of a contract. "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." O.C.G.A. § 13–1–1 (1982). To be enforceable, it must be based on "a meeting of the minds of the parties, mutuality, and the clear expression of the terms of the agreement." *Jackson v. Easters*, 190 Ga.App. 713, 714, 379 S.E.2d 610, 611 (1989); *see also* O.C.G.A. § 13–3–1 (1982) (providing the essentials of a contract). The terms "must be expressed plainly and explicitly enough to show what the parties agreed upon." *Patel v. Gingrey Assocs.*, 196 Ga. App. 203, 206, 395 S.E.2d 595, 597 (1990). "[A]n agreement expressed in incomplete or incomprehensive terms cannot be enforced." *Id.* Nevertheless, the law discourages "destruction of contracts on the ground of uncertainty" to the point of implying terms when warranted so long as the contract is otherwise "substantially alleged." *Pierson v. General Plywood Corp.*, 76 Ga.App. 853, 855, 47 S.E.2d 605, 607 (1948). In this case the uncertainty of

contract terms is so pervasive that based on the available evidence-the repair invoices prepared by LJL and bits of testimony provided by witnesses for both parties-the Court is unable to determine even the basic elements of the agreement.

First, other than LJL, it is unclear who the parties to the contract are. Mr. Tanley's name appears in the upper left corner of each invoice, but he testified that he took no part in determining the extent of the repairs. Rather his insurance company both approved the proposed repairs and paid for them. The parties are considered an essential term of the contract and must be certain. *Peace v. Dominy Holdings, Inc.*, 251 Ga.App. 654, 655–56, 554 S.E.2d 314, 315 (2001). According to the evidence before the Court, the identities of the contracting parties are not certain in this case.

Second, the scope of the contract is unclear. Mr. Tanley has asserted that he expected LJL to make all necessary repairs at one time. LJL, on the other hand, provided testimony that subsequent supplemental repairs are standard in the collision repair business because not all damage is ascertainable upon initial inspection. The invoices provide no assistance in this matter. They contain no language regarding whether or not additional repairs may be needed. In fact, they amount to little more than a list of parts by one-word description and price, and a brief description of labor. Aside from the testimony on supplemental repairs the Court has no evidence before it of industry custom from which certainty of terms might be inferred. Without more evidence, the scope of the contract is uncertain.

Because the Creditors have failed to prove certain essential terms of the contract, the Court is unable to conclude that they are entitled to damages for breach of

contract. Because the Creditors have also failed to prove an enforceable tort claim, the Court will disallow their claim in its entirety.

An Order in accordance with this Opinion will be entered on this date.