[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11644
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 13, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-00158-TCB

ALEA LONDON LIMITED,

Plaintiff-Appellee,

versus

AMERICAN HOME SERVICES, INC.,
a.k.a. A.H.S., Inc.,

Defendant,

A FAST SIGN COMPANY, INC.,
d/b/a Fastsigns on behalf of That Certain Class Certified
by the September 21, 2006 Order of the Fulton County, GA
Superior Court in Case No. 2003-CV-77276,

Defendant-Appellant.

_____

No. 10-11645

_____

D.C. Docket No. 1:09-cv-00158-TCB

ALEA LONDON LIMITED,

Plaintiff-Appellee,

versus

AMERICAN HOME SERVICES, INC.,
a.k.a. A.H.S., Inc.,

Defendant-Appellant,


A FAST SIGN COMPANY, INC.,
d.b.a. Fastsigns on behalf of That Certain Class Certified
by the September 21, 2006 Order of the Fulton County, GA
Superior Court in Case No. 2003-CV-77276 doing business as Fastsigns,

Defendant.


_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(April 13, 2011)


2

Before HULL and BLACK, Circuit Judges, and HOWARD,[*] District Judge.

HULL, Circuit Judge:

Plaintiff-Appellee Alea London Limited ("Alea" or "the insurer") filed this declaratory judgment action, alleging it had no duty to defend or indemnify its insured, defendant American Home Services, Inc. ("AHS" or "the insured"), in state court litigation brought by A Fast Sign Company, Inc. ("FastSigns"). In the state lawsuit, FastSigns sued the insured, AHS, for sending unsolicited faxes in violation of the Telephone Consumer Protection Act of 1991 ("TCPA").

In its summary judgment rulings, the district court concluded, <u>inter alia</u>, that (1) the insurer Alea had a duty to defend and indemnify AHS in the state lawsuit; (2) the $500 per-claimant deductible in the Alea policy applied to coverage for AHS's "advertising injury" liability; (3) the punitive damages exclusion in the Alea policy applied to any treble damages awarded against AHS under the TCPA; and (4) the Alea policy covered costs but not attorneys' fees awarded against AHS in the state lawsuit. Both the insured AHS and FastSigns appeal the lack-of-coverage rulings as to punitive damages and attorneys' fees. AHS appeals the ruling as to the $500 per-claimant deductible.

---

[*]The Honorable Marcia Morales Howard, United States District Judge for the Middle District of Florida, sitting by designation.

After review of the record and the briefs, and with the benefit of oral argument, we affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From July 17, 2002, to July 17, 2003, AHS was the named insured on a commercial general liability insurance policy (the "Policy") issued by Alea. The Policy covers sums AHS must pay because of "advertising injury," defined as follows:

> **Coverage B. Personal and Advertising Injury Liability**
> **1. Insuring Agreement**
> 
> a. We will pay those sums that <u>the insured becomes legally obligated to pay as damages because of</u> personal injury or <u>advertising injury</u> to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. . . .
> 
> . . . .
> **Section V– Definitions**
> 1. <u>Advertising injury means injury arising out of</u> one or more of the following offenses:
> 
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> b. Oral or <u>written publication of material that violates a person's right of privacy</u>;
> c. Misappropriation of advertising ideas or style of doing business; or
> d. Infringement of copyright, title or slogan.[1]

(Emphasis added)

---

[1]Coverage A of the Policy provides coverage for Bodily Injury Liability and Property Damage Liability. Coverage B provides coverage for Personal Injury Liability and Advertising Injury Liability.

4

## A.    State Court Litigation

In 2002, the insured AHS began selling and installing windows, siding, and gutters.  AHS hired a third-party marketing firm to send advertisements via fax.  This third-party firm sent approximately 300,000 fax advertisements on AHS's behalf, including one to FastSigns in March 2003.

On October 31, 2003, FastSigns filed suit against the insured AHS in Georgia state court (the "state lawsuit"), alleging that AHS's fax advertisements violated the TCPA's prohibition on "an unsolicited advertisement to a telephone facsimile machine."  47 U.S.C. § 227(b)(1)(C).[2]  The TCPA creates a private right of action under which a party can bring suit to recover its "actual monetary loss" or "to receive $500 in damages" per violation, whichever is greater.  Id. § 227(b)(3)(B).  If the violation was willful or knowing, the TCPA allows the court, in its discretion, to "increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph B" above.  Id. § 227(b)(3) (emphasis added).  The TCPA is unusual because it creates a private right of action that may be brought in state court only.  Nicholson v. Hooters of

---

[2]Section 227 was amended after the events that give rise to the state court litigation. References to the TCPA in this opinion are to the relevant pre-2005 version of the statute.

Augusta, Inc., 136 F.3d 1287, 1287-89 (11th Cir.), modified on reh'g, 140 F.3d 898 (11th Cir. 1998).

In the state lawsuit against the insured AHS, FastSigns asked for class certification of its TCPA claims, $500 in statutory damages for each violation of the TCPA, and the TCPA's statutory trebling of each award for AHS's "willful or knowing" violations. FastSigns also sought to recover its expenses of litigation, including attorneys' fees, under Georgia law, O.C.G.A § 13-6-11. The state trial court certified FastSigns's claims for class adjudication, a decision later upheld on appeal. Am. Home Servs., Inc. v. A Fast Sign Co., 287 Ga. App. 161 (2007).

At the outset of the state lawsuit, AHS requested that its insurer Alea provide a defense and indemnify AHS for any damages. Alea hired counsel to defend AHS under a Bilateral Non-Waiver and Reservation of Rights Agreement. Alea defended AHS for six years in the state lawsuit.[3]

## B. Federal Declaratory Judgment Action

In 2009, the insurer Alea filed this declaratory judgment action against AHS and FastSigns, seeking to resolve several substantive issues regarding what AHS's

---

[3]In the certified class action, the state trial court found that AHS was responsible for sending 306,000 unsolicited faxes in violation of the TCPA. On September 15, 2010, following a bench trial, the state court awarded treble damages of $1,500 for each violation, resulting in a total award of $459 million.

Policy with Alea did or did not cover. Specifically, Alea sought a declaratory judgment that: (1) it did not have to indemnify AHS for damages because the Policy did not cover the claims in the state lawsuit; (2) even if the Policy covered those claims, Alea did not have to pay any damages award up to $500 per individual because that amount fell within the per-claimant deductible schedule in the Policy; and (3) any award in the state lawsuit increasing the $500 damages award based on a finding of willful or knowing violations of the TCPA by AHS was not covered due to the Policy's exclusion of punitive or exemplary damages.

FastSigns and Alea filed cross-motions for summary judgment.[4] In rulings not challenged in this appeal, the district court determined: (1) that the Policy obligated Alea to defend and indemnify AHS in the state lawsuit; and (2) that AHS's facsimile transmissions in violation of the TCPA amounted to violations of "a person's right of privacy" for purposes of Advertising Injury Liability under the Policy.[5] In rulings now challenged in this appeal, the district court concluded that:

---

[4]Alea actually filed its Motion for Summary Judgment after the deadline, and had to seek the district court's leave to file its motion. The district court allowed this tardy filing; that decision is not on appeal.

[5]As to Advertising Injury Liability coverage, there are arguably issues whether that coverage, as defined in the Policy, exists only when the content of the material published by unsolicited faxes violates a person's right to privacy or whether the TCPA-prohibited publication of the unsolicited advertisement is itself violative of a person's right to privacy. See Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1312 (11th Cir. 2008) (Penzer I) (certifying to Florida Supreme Court question whether advertising injury liability insurance covered liability for unsolicited faxes in violation of the TCPA); Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1002 (Fla. 2010)

7

(1) the $500 per-claimant deductible applies to AHS's coverage for Advertising

Injury Liability; (2) treble damages under the TCPA are punitive in nature and

consequently are excluded by the Policy; and (3) the Policy does not cover any

attorneys' fees awarded against AHS in the state lawsuit.[6]  The parties do not

dispute that the Policy was entered into in Georgia and that Georgia law governs

construction of the Policy.[7]  Thus we first examine relevant Georgia law and then

the specific parts of the Policy in issue.

## II. GEORGIA LAW

Georgia law directs courts interpreting insurance policies to ascertain the

intention of the parties by examining the contract as a whole.  Ryan v. State Farm

Mut. Auto. Ins. Co., 261 Ga. 869, 872 (1992).  A court must first consider "the

---

(Penzer II) (answering certified question in affirmative under Florida law); Penzer v. Transp. Ins. Co., 605 F.3d 1112, 1113-14 (11th Cir. 2010) (Penzer III) (remanding to district court for judgment in accord with Florida Supreme Court's ruling).  Although these insurance coverage issues were litigated in the district court, they are not raised here and we need not address them under Georgia law.

[6]On the last day of discovery, FastSigns filed a Motion to Compel Discovery from Alea, alleging that Alea improperly withheld documents under a claim of privilege.  The district court denied FastSigns's Motion to Compel, ruled its motion was not "substantially justified," and ordered it to pay costs and attorneys' fees to Alea. FastSigns appeals the district court's denial of its Motion to Compel and the award of attorneys' fees to Alea.  After review, we find no abuse of discretion or reversible error in the district court's discovery rulings and award of attorneys' fees.  Thus, we affirm those particular rulings without further discussion.

[7]The construction of an insurance contract is a question of law the Court reviews de novo. St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 897 (11th Cir. 2009); Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).

ordinary and legal meaning of the words employed in the insurance contract." Id. An insurance policy "should be read as a layman would read it." York Ins. Co. v. Williams Seafood of Albany, Inc., 273 Ga. 710, 712 (2001). "[P]arties to the contract of insurance are bound by its plain and unambiguous terms." Peachtree Cas. Ins. Co. v. Kim, 236 Ga. App. 689, 690 (1999). "If the terms of the contract are plain and unambiguous, the contract must be enforced as written . . . ." Ryan, 261 Ga. at 872.

An ambiguity exists, however, when the plain words of a contract are fairly susceptible of more than one meaning. Collier v. State Farm Mut. Auto. Ins. Co., 249 Ga. App. 865, 867 (2001). Georgia law teaches that an ambiguity "is duplicity, indistinctness, an uncertainty of meaning or expression." Id. When a term in a contract is ambiguous, Georgia courts "apply the rules of contract construction to resolve the ambiguity." Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc., 285 Ga. App. 844, 848 (2007).

Pursuant to Georgia's rules of contract construction, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2(4). Further, ambiguities are construed against the drafter of the contract (i.e., the insurer), and in favor of the insured. Kim, 236 Ga. App. at 690;

9

O.C.G.A. § 13-2-2(5). Accordingly, in this case, any ambiguity will be construed against Alea, the drafter of the Policy, and in favor of coverage.

If the ambiguity remains after the court applies the rules of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by [the finder of fact]." Rucker Constr., 285 Ga. App. at 848. (quotation marks omitted).

### III. DEDUCTIBLE

The district court ruled a $500 per-claimant deductible applies to any damages from Advertising Injury Liability awarded against AHS. The district court's determination was based on the Policy's schedule, contained in a two-page "Optional Provisions Endorsement," that states:

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT
CAREFULLY
**OPTIONAL PROVISIONS ENDORSEMENT**

In consideration of the premium charged, it is agreed that the following special provisions (indicated by an "X") apply to this policy

**SCHEDULE**

(x)    **Bodily Injury and Property Damage Liability Deductible Endorsement**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $500.00 | per claimant |
| Property Damage Liability | $500.00 | per claimant |
| Personal Injury Liability | $500.00 | per claimant |
| Advertising Injury Liability | $500.00 | per claimant |

10

The district court stressed that this is the only deductible provision mentioning Advertising Injury Liability and this schedule plainly provides for a deductible of $500 per claimant for Advertising Injury Liability. The district court determined that "[t]he plain language of the Policy suffices to determine the parties' intent with respect to the deductible for advertising injury liability, which is the type of liability at issue in this case."

On appeal, AHS primarily argues that the district court erred because the "Optional Provisions Endorsement," in which the Advertising Injury Liability deductible appears, applies only to coverage for Bodily Injury Liability or Property Damage Liability, or alternatively that the Policy is at least ambiguous as to the deductible.[8]

We conclude that the district court committed no error in its construction of the Policy, and this "Optional Provisions Endorsement" in particular. The Endorsement plainly sets forth a $500 "per claimant" deductible for all "Advertising Injury Liability." These plain words are not susceptible to more than one meaning.

---

[8]This Optional Provisions Endorsement also contains a later paragraph (entitled "Bodily Injury and Property Damage Liability Deductible Endorsement"), that states (1) any limitations on the application of this endorsement must be written below; and (2) that if no such limitations appear, "the deductibles apply to damages for all 'bodily injury' and 'property damage,' however caused." However, nothing in this later discussion mentions Advertising Injury Liability or contradicts the text of the blocked schedule.

We fully recognize that this plain statement in the "Optional Provisions Endorsement" is placed under the sub-phrase "Bodily Injury and Property Damage Liability Deductible Endorsement." However, the schedule itself is blocked in bold, contains its own bolded column heading of "Coverage" and thereunder separates out all four types of coverage in the Policy: Bodily Injury Liability; Property Damage Liability; Personal Injury Liability; and Advertising Injury Liability. The blocked schedule then states across from each type of liability coverage that the deductible is $500 per claimant. Nothing in the rest of this Endorsement makes this plain language in the blocked schedule ambiguous. Further, the only other deductible schedule in the entire Policy provides expressly for a deductible of $500 per occurrence for Bodily Injury Liability and/or Property Damage Liability combined, but makes no mention of Personal Injury Liability or Advertising Injury Liability.

To accept AHS's argument would ignore the plain text of the blocked schedule. Importantly, it would also read the Advertising Injury Liability deductible language out of the Policy, rendering it nugatory, an outcome disfavored by the Georgia courts. See Harkins v. Progressive Gulf Ins. Co., 262 Ga. App. 559, 561 (2003) ("In construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision

12

to harmonize with each other." (emphasis added) (quotation marks omitted)).  It is not this Court's role to aid the insured by extending its coverage beyond that for which it contracted.  See Burnette v. Ga. Life & Health Ins. Co., 190 Ga. App. 485, 485 (1989) ("Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage.").[9]  Accordingly, we find no error in the district court's conclusion that the $500 per-claimant deductible applies to AHS's Advertising Injury Liability coverage.[10]

## IV. PUNITIVE DAMAGES EXCLUSION

As noted earlier, the TCPA makes it "unlawful for any person . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited

---

[9]The insured AHS also contends that Alea should be equitably estopped from asserting non-coverage defenses in this declaratory judgment action because the attorneys Alea hired to represent AHS in the state lawsuit allegedly failed to notify AHS of a $1,000,000 settlement offer by FastSigns.  We reject AHS's equitable estoppel argument.  Nothing herein, however, rules on whether this affects the monetary limits of liability under Alea's Policy.

[10]On appeal, FastSigns contends that several of these issues decided by the district court, such as applicability of the deductible, were not ripe for adjudication, and that the district court therefore rendered an advisory opinion.  Each of FastSigns's contentions lacks merit.  See, e.g., Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 271-74, 61 S. Ct. 510, 511-13 (1941) (finding justiciable controversy in declaratory judgment action seeking interpretation of auto insurance contract).  This appeal is not similar to American Fidelity & Casualty Co. v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co., 280 F.2d 453 (5th Cir. 1960), which involved how liability for unresolved claims should be apportioned between several insurance companies.  See Edwards v. Sharkey, 747 F.2d 684, 686-87 (11th Cir. 1984) (discussing and distinguishing American Fidelity).

13

advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). The

TCPA creates a private right of action under which a party can bring "an action to

recover for actual monetary loss from such a violation, or to receive $500 in

damages for each such violation, whichever is greater." Id. § 227(b)(3)(B). The

TCPA is essentially a strict liability statute which imposes liability for erroneous

unsolicited faxes. Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1311 (11th Cir.

2008).

However, if the court determines that "the defendant willfully or knowingly

violated" the TCPA, "the court may, in its discretion, increase the amount of the

award to an amount equal to not more than 3 times the amount available under

subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3) (emphasis added).

The TCPA does not require any intent for liability except when awarding treble

damages. Penzer, 545 F.3d at 1311. Importantly though, the intent for treble

damages does not require any malicious or wanton conduct, but rather is satisfied

by merely "knowing" conduct.

Although the Policy easily could have excluded treble damages by name, it

does not do so. Rather, the Policy only has an exclusion for "damages attributable

to punitive or exemplary damages," as follows:

**Exclusion–Punitive or Exemplary Damage**

The following exclusion is added to Coverages A, B, and C (Section I): This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a suit shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defence for such action. We shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

(Emphasis added).[11] The Policy does not define punitive damages. Here, the disputed issue is whether the trebling of the statutory compensatory damages in 47 U.S.C. § 227(b)(3) constitutes punitive damages for purposes of the punitive damages exclusion in the Policy.

The district court determined that treble damages under the TCPA are punitive in nature, concluding that they are "closer to punishment than to payback." Accordingly, the district court held that any treble damages awarded against AHS in the state lawsuit fell under the punitive damages exclusion in the Policy, and Alea is not obligated to indemnify AHS for those treble damages. Before interpreting the TCPA and the punitive damages exclusion in the Policy, we examine relevant Supreme Court cases about the nature of statutory treble damages.

---

[11]Exemplary damages is a synonym for punitive damages. See, e.g., O.C.G.A § 51-12-5.1(a) (stating that, for purposes of Georgia's punitive damages statute, "punitive damages" is synonymous with "exemplary damages"). Thus, we refer simply to punitive damages throughout this opinion.

15

**A.      Supreme Court Cases Examining Statutory Treble Damages**

The Supreme Court has addressed the issue of whether treble damages should be considered compensatory or punitive in the context of several different statutes.  Generally, Supreme Court "cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards."  PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 405, 123 S. Ct. 1531, 1535 (2003).  The Supreme Court has found that "the tipping point between payback and punishment defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation."  Cook Cnty., Ill. v. United States ex rel. Chandler, 538 U.S. 119, 130, 123 S. Ct. 1239, 1246 (2003).

In fact, treble damages statutes defy easy categorization as compensatory or punitive in nature.  Whether treble damages under a given statute are considered compensatory or punitive is an intensely fact-based inquiry that may vary statute-to-statute.  Compare Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 151, 107 S. Ct. 2759, 2764 (1987) ("Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees."), Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 240, 107 S. Ct. 2332, 2345 (1987) (discussing the "remedial role of

16

the treble-damages provision" in RICO),  Am. Soc'y of Mech. Eng'rs, Inc. v.

Hydrolevel Corp., 456 U.S. 556, 575, 102 S. Ct. 1935, 1947 (1982) (noting

antitrust private action, which allows for treble damages, "was created primarily as

a remedy for the victims of antitrust violations," and stating that "[t]reble damages

make the remedy meaningful by counter-balancing the difficulty of maintaining a

private suit under the antitrust laws" (quotation marks omitted)), Brunswick Corp.

v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485-86, 97 S. Ct. 690, 696 (1977)

(characterizing § 4 of the Clayton Act, 15 U.S.C. § 15, which permits recovery of

treble damages,  as "in essence a remedial provision"), Chandler, 538 U.S. at 130-

34, 123 S. Ct at 1246-49 (stating, in a lawsuit against a municipal corporation, that

"it is important to realize that treble damages have a compensatory side, serving

remedial purposes in addition to punitive objectives," and concluding a municipal

corporation is a "person" subject to treble damages under the False Claims Act),[12]

PacifiCare Health Sys., 538 U.S. at 405-07, 123 S. Ct. at 1535-36 (discussing the

Supreme Court's prior conclusions that RICO's treble-damages provision is

remedial, construing an arbitration clause prohibiting punitive damages, finding

---

[12]The False Claims Act makes treble damages available against any person who, inter alia, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1) (emphasis added).  Both Chandler and Stevens construed the same FCA but appear to have reached opposite conclusions based on whether a state entity or a municipal corporation was the defendant.

the application of that clause to statutory treble damages under RICO "is, to say the least, in doubt," and leaving it to arbitrator to determine meaning of punitive damages exclusion in arbitration agreement), with Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 784-88, 120 S. Ct. 1858, 1869-71 (2000) (stating, in context of a lawsuit against a state, that the state is immune from punitive damages, that the False Claims Act "imposes damages that are essentially punitive in nature," and thus that the state is not a "person" who can be liable under False Claims Act), Tex. Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639, 101 S. Ct. 2061, 2066 (1981) (indicating that treble damages under the antitrust laws can be considered punitive in nature and stating "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers").

In short, there is no rigid rule on characterizing treble damages statutes as either compensatory or punitive. With this background, we turn to the TCPA.

**B.     Nature of TCPA's Treble Damages**

Here, the structure and language of the TCPA are significant. Section 227(b)(3) provides:

(3) Private right of action

18

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State- -

> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover <u>for actual monetary loss</u> from such a violation, <u>or to receive $500 in damages for each such violation</u>, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant <u>willfully or knowingly</u> violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than <u>3 times the amount available under subparagraph (B) of this paragraph</u>.

47 U.S.C. § 227(b)(3) (emphasis added). The statute itself does not say whether these treble damages are considered compensatory or punitive. While this Court has not ruled on the nature of treble damages in the TCPA, we have held that the TCPA's $500 statutory damages provision is not punitive. <u>Penzer</u>, 545 F.3d at 1311.[13]

---

[13] In making its determination about the $500 statutory damages, the <u>Penzer</u> Court reasoned: "The TCPA provides for $500 statutory damages and for treble damages for willful or knowing conduct, 47 U.S.C. § 227(b)(3), which is an indication that the statutory damages were not designed to be punitive damages." <u>Penzer</u>, 545 F.3d at 1311. However, the <u>Penzer</u> Court followed that analysis by pointing out that "punitive damages under Florida law must be based on behavior which indicates a wanton disregard for the rights of others." <u>Id.</u> (quotation marks omitted). Given, in part, the nature of the conduct triggering punitive damages under Florida law, the <u>Penzer</u> Court concluded that Florida's public policy–prohibiting insuring against punitive damages liability–did not apply to the $500 statutory damages under the TCPA. <u>Id.</u>

In <u>Penzer</u>, the insured had settled a class action claim arising from its 24,000 unsolicited

19

Further, the TCPA's statutory language directly links the base compensatory damages in subparagraph B (either actual monetary loss or $500, whichever is greater) to the treble damages when it says that "the court may . . . increase the amount . . . to not more than 3 times the amount available under subparagraph (B)."  47 U.S.C. § 227(b)(3).  In other words, the statute allows the court to "increase" the compensatory award by up to three times.  Id.  The statute does not require a trebling, but permits an increase up to three times.  The statute also caps damages at up to three times the § 227(b)(3)(B) compensatory amount.  "[C]lassic punitive damages . . . leave the jury with open-ended discretion over the amount" of the damage award; treble damages under the TCPA limit the court to trebling the amount of the compensatory award.  Chandler, 538 U.S. at 132, 123 S. Ct. at 1247.

And given the relatively small amount of statutory damages available under the TCPA, trebling these damages appears to be a mechanism to encourage victims of unsolicited "junk" faxes to file suit.  Cf. Chandler, 538 U.S. at 131, 123 S. Ct. at 1247 (stating that difference between double and treble damages in qui

faxes for $12 million based on $500 in statutory damages per fax.  Id. at 1304 n.1.  No treble damages were part of the settlement and thus the issue in Penzer involved only the TCPA's $500 in statutory damages.

20

_tam_ cases may serve not to punish, but instead to encourage private plaintiffs to litigate).

Finally, the TCPA, which allows treble damages for either willful <u>or</u> <u>knowing</u> conduct, does not match up with Georgia's conduct requirements for punitive damages.  <u>See</u> O.C.G.A. § 51-12-5.1(b) (stating that Georgia law requires "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences" before a jury may award punitive damages).[14]  To the extent we apply Georgia law in construing the Policy, Georgia's conduct requirement for statutory punitive damages is materially different from the TCPA conduct requirement of knowingly sending an unsolicited fax.  Further, the Georgia courts have rejected the claim that treble damages are in every case the substantial equivalent of punitive damages.  <u>Williams Gen. Corp. v. Stone</u>, 279 Ga. 428, 429-30 (2005); <u>Colonial Lincoln-Mercury Sales, Inc. v. Molina</u>, 152 Ga. App. 379, 382 (1979).[15]

---

[14]The Georgia punitive damages statute also requires clear and convincing evidence to impose punitive damages; the TCPA includes no such restriction.

[15]In <u>Williams</u>, the Georgia Supreme Court stated:
Punitive damages . . . serve the legislative purpose of imposing sanctions, whereas treble damages, which are authorized by the statute without reservation in every civil RICO action, further RICO's goal of compensating victims and providing incentive for "private attorney generals" [sic] to initiate actions against those in violation of the Act. . . . We thus reject the

21

For all of these reasons, we conclude that, for the purposes of interpreting the coverage provided by an insurance contract governed by Georgia law, the TCPA's treble damages provision falls more on the compensatory than the punitive side. Alea could have drafted the Policy's punitive damages exclusion to expressly bar coverage for "treble damages," or all damages that were "in any way non-compensatory," or damages that were "in part in the nature of punitive damages." But it did not. And arguably even if the Policy's punitive damages exclusion could reasonably be interpreted to extend to treble damages under the TCPA, it also can reasonably be interpreted, for the above-discussed reasons, not to extend to TCPA treble damages. Therefore, the punitive damages exclusion is at a minimum ambiguous, and under Georgia law must be construed against Alea and in favor of coverage. See O.C.G.A. § 13-2-2(5) ("If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred."); York Ins. Co., 273 Ga. at 712 (stating that, in construing insurance contracts, "exclusions will be strictly construed against the insurer and in favor of coverage"). Thus, the district court erred in concluding the Policy excluded coverage for TCPA treble damages.

---

Court of Appeals' premise that clear and convincing evidence is required because treble damages are the substantial equivalent of punitive damages.
279 Ga. at 429-30.

22

## V. ATTORNEYS' FEES

In the Insuring Agreement for Coverage B, the Policy obligates Alea to "pay those sums that the insured [AHS] becomes legally obligated to pay as <u>damages</u> because of . . . advertising injury to which this insurance applies."  In the Supplementary Payments section for Coverages A and B, the Policy obligates Alea to pay "with respect to any claim or suit [Alea] defend[s] . . . [a]ll <u>costs</u> taxed against the insured in the suit." (Emphasis added).   Alea has not contested the district court's determination that it must indemnify AHS for costs awarded in the state lawsuit.  The only issue is whether the district court properly concluded that Alea is not obligated to indemnify AHS for attorneys' fees awarded to FastSigns.

On appeal, AHS does not argue that attorneys' fees fall under the Policy's above coverage for "costs taxed against the insured."[16]  Rather, AHS relies heavily on a Georgia statute that allows a plaintiff to recover the "expenses of litigation" where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  O.C.G.A. § 13-6-11.   AHS contends that attorneys' fees are "expenses of litigation" and thus become

---

[16]The ordinary and legal meaning of "costs" under Georgia law does not include attorneys' fees. <u>See</u> <u>Worsham Bros. v. FDIC</u>, 167 Ga. App. 163, 166 (1983).

23

"damages" covered under the Policy under § 13-6-11. AHS contends Alea's obligation to cover attorneys' fees arises from Alea's contractual duty to indemnify AHS for any "damages" award.[17]

Under plain language interpretation, AHS's argument runs contrary to the "ordinary and legal meaning" of the Policy's terms. Ryan, 261 Ga. at 872. Under Georgia law, attorneys' fees, even where recoverable, are not typically included within the ordinary species of damages. See, e.g., Bldg. Mat'ls Wholesale, Inc. v. Triad Drywall, LLC, 287 Ga. App. 772, 778 (2007) ("Because litigation expenses (costs and attorney fees) are wholly ancillary, they are not recoverable when no damages are awarded." (quotation marks omitted)); 4WD Parts Ctr., Inc. v. Mackendrick, 260 Ga. App. 340, 345 (2003) ("Attorney fees are not recoverable under OCGA § 13-6-11 where there is no award of damages or other relief on any underlying claim."); Fontaine Condo. Ass'n v. Schnacke, 230 Ga. App. 469, 470 (1998) (stating that "recovery of attorney fees [is] generally foreclosed unless damages [are] recovered"); George F. Brown & Sons, Inc. v. Knowles, 196 Ga. App. 594, 595 (1990) ("Since damages are not recoverable, appellee is not entitled

---

[17]We recognize that FastSigns separately argues that the state trial court may award attorneys' fees under O.C.G.A. § 9-15-14, Georgia's frivolous litigation statute, or some other alternative to § 13-6-11. FastSigns contends that this would undercut the district court's determination that Alea has no obligation to indemnify AHS for attorneys' fees, which FastSigns argues was based solely on § 13-6-11. FastSigns's argument lacks merit.

24

to attorney fees."); see also Credle v. East Bay Holding Co., 263 Ga. 907 (1994) (stating, in bid contest case, that "attorney fees could be recovered, not as an inherent part of the damages incurred by a frustrated bidder, but by establishing the requirements of the particular statute that authorizes attorney fees" (quotation marks and citation omitted)). Thus, even where attorneys' fees are recoverable under O.C.G.A. § 13-6-11, they are ancillary to a plaintiff's damages claim and require proof of an additional element. See O.C.G.A. § 13-6-11; 4WD Part Ctr., 260 Ga. App. at 345. That "attorneys' fees" would be subsumed within the Policy's reference to "damages" is not consistent with a plain, ordinary-meaning reading of the Policy. Furthermore, that attorneys' fees are part of the "expenses of litigation" under § 13-6-11 does not mean they become "damages" under the Policy. The Policy covers damages and costs but notably does not mention attorneys' fees.

This plain-language conclusion is also supported by the Policy's structure. See O.C.G.A. § 13-2-2(4) (stating that "the whole contract should be looked to in arriving at the construction of any part"). The Policy's Insuring Agreement for Coverage B includes this "damages" indemnity:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies. We will have the right and duty to defend any

suit seeking those damages. We may at our discretion investigate any occurrence or offense and settle any claim or suit that may result. . . .

The Insuring Agreement places in separate sentences Alea's obligations to (1) pay damages AHS becomes obligated to pay, (2) defend lawsuits against AHS, and (3) investigate and settle claims. In the next paragraph, that Insuring Agreement then states: "No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENT – COVERAGES A AND B."

In turn, the separate Supplementary Payment section of the Policy, referred to above, describes Alea's payment obligations "with respect to any claim or suit we defend." These "Supplemental Payment" obligations are expressly listed as: (1) expenses incurred by Alea in defending AHS's lawsuits; (2) cost of certain bonds; (3) reasonable expenses AHS incurs at Alea's request in investigating or defending the lawsuit; (4) all costs taxed against AHS in the lawsuit; (5) pre-judgment interest; and (6) post-judgment interest. Notably absent is any supplementary payment for attorneys' fees for claimants against AHS.

There is no language in this Policy provision, or any other provision of the Policy cited by AHS, that leads to the conclusion that the insurance contract contemplated that Alea would indemnify AHS for its opponents' attorneys' fees.

For all of these reasons, we conclude the district court did not err in concluding that Alea is not obligated to indemnify AHS for attorneys' fees assessed in the state lawsuit.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's rulings as to the $500 per-claimant deductible and the attorneys' fees. We reverse the district court's ruling that the Policy's punitive damages exclusion applies to treble damages under the TCPA. We remand for further proceedings consistent with this opinion.[18]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[18]We deny FastSigns's and Alea's motions to supplement the record on appeal.