[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13827

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 23, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-61243-CV-AJ

MICHAEL PENZER, as assignee of
SOUTHEAST WIRELESS, INC.,

　　　　　　　　　　　　Plaintiff–Counter-Defendant–Appellant,

　　versus

TRANSPORTATION INSURANCE COMPANY,
a wholly owned subsidiary of CNA, a foreign corporation,

　　　　　　　　　　　　Defendant–Counter-Claimant–Third-Party-
　　　　　　　　　　　　Plaintiff–Appellee,

　　versus

SOUTHEAST WIRELESS, INC., NEXTEL SOUTH CORP.,

　　　　　　　　　　　　Third-Party-Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 23, 2008)**

Before TJOFLAT and BLACK, Circuit Judges, and RESTANI[*], Judge.

PER CURIAM:

This appeal involves an insurance coverage dispute. Appellant Michael Penzer ("Penzer") is the assignee of Southeast Wireless, Inc. ("Southeast"). Appellee Transportation Insurance Company ("Transportation") issued to Southeast a commercial liability policy that included coverage for "advertising injury." Penzer and Southeast entered into a class action settlement[1] of claims that Southeast violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (2000), based on unsolicited facsimile transmissions it sent to Penzer and others.[2] The district court found the policy language unambiguous and that "advertising injury" coverage as defined in the policy "exists only when the content of the material published violates a person's right to privacy." Penzer v. Transp. Ins. Co., 509 F. Supp. 2d 1278, 1286 (S.D. Fla. 2007). In other words, it

---

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

[1] Penzer released Southeast from any liability arising from the TCPA violations and Southeast assigned Penzer its right to seek insurance coverage from Transportation under the insurance policy. Southeast consented to a $12 million judgment, which was calculated by multiplying the 24,000 unsolicited facsimile advertisements it transmitted by $500, the statutory damages amount permitted by the TCPA for each violation.

[2] The TCPA makes it "unlawful for any person . . . to use any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).

2

held unwanted intrusions, such as violations of the TCPA, are not covered advertising injuries. We certify the issue to the Florida Supreme Court.

## I. BACKGROUND

On September 22, 2004, Penzer, as assignee of Southeast, filed a complaint against Transportation seeking a declaratory judgment as to Transportation's duty to defend and indemnify Southeast under the insurance policy at issue. Under Southeast's insurance policy, Transportation had the duty to indemnify and defend claims that fell under an "advertising injury" provision covering an "injury arising out of . . . [o]ral or written publication of material that violates a person's right of privacy." (Record Excerpts Tab 1 (Ex. C), Business Liability Coverage Form ("Policy") at 10.) Penzer alleged that the claims against Southeast were covered by this provision because the transmission of an unsolicited facsimile advertisement constituted the publication of written material. Transportation filed a counterclaim seeking a declaration that Southeast was not covered under the provision, because it was unambiguous and did not encompass Penzer's claims, or in the alternative, because coverage was not required due to several policy exclusions.

The district court granted a stay of proceedings pending the disposition of the appeal in Hooters of Augusta, Inc. v. American Global Insurance Co., a case

involving coverage under the same policy provision for an identical TCPA violation. In a non-precedential decision, and applying Georgia law, we held that the insurer was obligated to defend and indemnify its insured against TCPA claims. Hooters, 157 Fed. App'x 201, 210 (11th Cir. 2005). Following the decision, the district court lifted the stay, and both Penzer and Transportation filed cross-motions for partial summary judgment on the issue of coverage under the policy. The district court granted summary judgment in favor of Transportation, finding Hooters unpersuasive and instead finding that the holding of State Farm Fire & Casualty Co. v. Compupay, Inc., 654 So. 2d 944 (Fla. Dist. Ct. App. 1995), set forth the applicable Florida law. Penzer, 509 F. Supp. 2d at 1284–86. Specifically, the district court determined that the phrase "'oral or written publication of material that violates a person's right of privacy' is unambiguous, and that advertising injury coverage under this provision exists only when the content of the material published violates a person's right to privacy." Id. at 1286 (emphasis added). Penzer timely appealed.

## II. DISCUSSION

### A. General Florida Insurance Law Principles

The parties agree that Florida law governs this case, but the Supreme Court of Florida has not construed the particular policy language at issue. Generally,

4

under Florida law, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000); see also Fla. Stat § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy."). Policy terms are given their plain and ordinary meaning and read in light of the skill and experience of ordinary people. Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219, 222 (Fla. Dist. Ct. App. 2006); see also Vencor Hosps., Inc. v. Blue Cross Blue Shield of R.I., 284 F.3d 1174, 1180–81 (11th Cir. 2002). Undefined terms and complex terms requiring analysis are "not automatically rendered ambiguous," Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003), however, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners, 756 So. 2d at 34. Ambiguities are construed against the insurer. State Farm Fire & Cas. Ins. Co. v. CTV Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998).

**B.    The Relevant Policy Language**

The policy defines "advertising injury" as follows:

[I]njury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. <u>Oral or written publication of material that violates a person's right of privacy;</u>

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

(Policy at 10 (emphasis added).) The terms "publication," "material," and "right of privacy" are not defined by the policy.

There are two relevant exclusions in the policy for "advertising injury." The first excludes coverage for "advertising injury" "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." (<u>Id.</u> at 5.) The second excludes coverage for "advertising injury" "arising out of . . . [b]reach of contract, other than misappropriation of advertising ideas under an implied contract." (<u>Id.</u> at 6.)

## C. The Parties' Positions on Coverage

Penzer argues that broad dissemination of facsimile advertisements is consistent with the commonly understood definitions of "publication" and "material," two terms used in the policy, and that sending unsolicited facsimile advertisements violates a person's "right of privacy" as it is commonly

6

understood, because privacy includes not just a secrecy or content component but also the right to be left alone. Penzer maintains that because "right of privacy" has at least two meanings, the provision must be construed liberally in favor of coverage.

Transportation argues that the policy terms cannot be considered in isolation and that when the provision is read as a whole and in the context of the other offenses mentioned, it provides for coverage only of content-based privacy violations.

## D.     The District Court's Resolution of the Coverage Issue

The district court determined that the policy was unambiguous and agreed with Transportation's position that the content of the published material itself must violate the right to privacy, finding persuasive the analysis conducted in American States Insurance Co. v. Capital Associates of Jackson County, Inc., 392 F.3d 939, 940–43 (7th Cir. 2004),[3] in denying coverage for TCPA claims under

---

[3] The district court failed to acknowledge that American States has been significantly undermined. In Valley Forge Insurance Co. v. Swiderski Electronics, Inc., the Illinois Supreme Court expressly declined to follow the Seventh Circuit's prediction of Illinois law in American States, finding instead that TCPA claims were covered under the policy. Valley Forge, 860 N.E.2d 307, 323 (Ill. 2006). The court reasoned that relying "on the proposition that 'publication' matters in a 'secrecy situation,' but not in a 'seclusion situation[,]' . . . as a basis for interpreting the insurance policy language" was inconsistent with the court's approach of construing undefined insurance policy terms by their plain and ordinary meanings. Id. (citation omitted).

7

the same policy language. Penzer, 509 F. Supp. 2d at 1286–87. The district court relied on American States's determination that the two principal meanings of privacy are secrecy and seclusion, and that "[t]he structure of the policy strongly implies that coverage is limited to secrecy interests" because "[i]n a secrecy situation, publication matters . . . [whereas] [i]n a seclusion situation, publication is irrelevant." Id. (quoting Am. States, 392 F.3d at 941–43). Additionally, the district court found that the fact that the other offenses covered under the "advertising injury" provision were content-based ("defamation, misappropriation of advertising ideas or style of doing business, infringement of copyright"), provided further evidence that the disputed provision should also be read similarly. Id. at 1287–88.[4]

Although Resource Bankshares Corp. v. St. Paul Mercury Insurance Co., 407 F.3d 631, 641–42 (4th Cir. 2005), found the four "advertising injury" offenses

---

[4] The authority relied on by the district court does not support this conclusion, as noted by Penzer. Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938 (Fla. 1979), merely stated a commonsensical approach to the reading of a policy exclusion, specifically, that two limiting clauses included under the exclusion relevant there applied to both subsections at issue, because they were all included under the ambit of a general provision. It does not require that all clauses within a paragraph of an insurance policy be treated as referring to the same type of injury. Fayad v. Clarendon National Insurance Co., 899 So. 2d 1082 (Fla. 2005), applied the principle of ejusdem generis, that is, when "general words follow an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned." Id. at 1088–99. This principle is inapplicable to the current provision because there are no general words here that are limited by the specific words preceding them.

to "share the common thread" of being content-based, other courts have come to the opposite conclusion regarding the identical provision. See, e.g., Valley Forge, 860 N.E.2d at 318 (finding TCPA claim coverage and stating that such coverage "does not, in any way, prevent the policies' alternative definitions of 'advertising injury' from being given effect or thwart their respective purposes").

The district court's holding that only content-based invasions of privacy, and not TCPA-based seclusion violations, are covered is also placed in doubt by the wide divergence in case law[5] interpreting "right of privacy" as used in this and

---

[5] Cases allowing advertising injury coverage of TCPA claims for unsolicited facsimiles include: Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA, 442 F.3d 1239 (10th Cir. 2006) (applying Kansas law); Hooters, 157 Fed. App'x 201 (applying Georgia law); Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876 (8th Cir. 2005) (applying Missouri law under different policy language); Am. Home Assurance Co. v. McLeod USA, Inc., 475 F. Supp. 2d 766 (N.D. Ill. 2007) (applying Illinois and Iowa law); W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co., 269 F. Supp. 2d 836 (N.D. Tex. 2003) (applying Texas law), aff'd mem., 96 Fed. App'x 960 (5th Cir. 2004); Prime TV, LLC v. Travelers Ins. Co., 223 F. Supp. 2d 744 (M.D.N.C. 2002) (applying North Carolina law); Terra Nova Ins. Co. v. Fray-Witzer, 869 N.E.2d 565 (Mass. 2007) (applying New Jersey law); Valley Forge, 860 N.E.2d 307 (applying Illinois law); TIG Ins. Co. v. Dallas Basketball, Ltd., 129 S.W.3d 232 (Tex. App. 2004) (applying Texas law). Cases reaching the opposite conclusion include: Resource Bankshares, 407 F.3d 631 (applying Virginia law); Am. States, 392 F.3d 939 (applying Illinois law); Ace Mortgage Funding, Inc. v. Travelers Indem. Co. of America, No. 1:05-cv-1631, 2008 WL 686953 (S.D. Ind. Mar. 10, 2008) (applying Indiana law); St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., No. 06-2759, 2007 WL 2571960 (D.N.J. Aug. 31, 2007) (applying New Jersey law); St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., No. C06-1056, 2007 WL 564075 (W.D. Wash. Feb. 16, 2007) (applying Washington law); Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488 (E.D. Pa. 2006) (applying Pennsylvania law), aff'd mem. sub. nom. Subclass 2 v. Melrose Hotel Co., 503 F.3d 339 (3d Cir. 2007); St. Paul Fire & Marine Ins. Co. v. Brunswick Corp., 405 F. Supp. 2d 890 (N.D. Ill. 2005) (applying Illinois law); ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co., 53 Cal. Rptr. 3d 786 (Cal. Ct. App. 2007) (applying California law). Many of the coverage denial cases construe policy language that uses the words "making known

(continued...)

similar provisions. See, e.g., Terra Nova, 869 N.E.2d at 573 ("It is fair to say that even the most sophisticated and informed insurance consumer would be confused as to the boundaries of advertising injury coverage in light of the deep difference of opinion symbolized in these cases.").

The district court found our non-precedential opinion in Hooters unpersuasive because it applied Georgia, not Florida, law. Penzer, 509 F. Supp. 2d at 1284–86. General principles of Florida and Georgia law, however, are similar in this area. See Hooters, 157 Fed. App'x at 205 (finding that under Georgia law a "reviewing court must consider the ordinary and legal meaning of the words" used in the policy, construing ambiguous terms "in favor of the insured to provide maximum coverage").

Additionally, the district court noted that Transportation's main argument, that the policy only covers an intrusion into seclusion that communicates private information, was not addressed in Hooters. Penzer, 509 F. Supp. 2d at 1284. The Hooters court did note, however, that the tighter wording of the policies involved in various cases denying coverage for TCPA claims seemed to have been a significant factor in the courts' decisions, that is "publication" of such material

---

[5](...continued)
to any person or organization" in place of "publication."

10

"does not suggest the focus on secrecy that 'making known' does." Hooters, 157 Fed App'x at 208; Contra Resource Bankshares, 407 F.3d at 641 ("'[M]aking known' implies telling, sharing or otherwise divulging, such that the injured party is the one whose private material is made known, not the one to whom the material is made known.").

Instead, the district court relied on Compupay, a case involving the duty to defend allegations of sexual harassment and discrimination pursuant to privacy tort coverage. Penzer, 609 F. Supp. 2d at 1284–85. Compupay held that the provision at issue did "not cover causes of action under the broader umbrella of invasion of privacy torts" but rather "cover[ed] actions within the traditional invasion of privacy tort: a publication of personal matter." Compupay, 654 So. 2d at 949.[6] Specifically, the district court noted that the clause at issue in Compupay covered only invasion of privacy claims involving the publication of a personal

---

[6] The district court found Compupay persuasive because the Florida Supreme Court had cited it in Allstate Insurance Co. v. Ginsberg, 863 So. 2d 156, 161–62 (Fla. 2003). Penzer, 509 F. Supp. 2d at 1285. Ginsberg, however, briefly discussed Compupay in order to reject the appellees' contention that Compupay was "a decision directly addressing the issue of whether unwelcome conduct including touching in a sexual manner and sexually offensive comments state a cause of action for the Florida common law tort claim of invasion of privacy." Ginsberg, 863 So. 2d at 162. The district court appeared to rely on Ginsberg's language that the court in Compupay "bas[ed] its decision on the specific language of the insurance policy at issue in that case, [and] found that the policy did not cover the cause of action under the broad umbrella of invasion of privacy torts." Penzer, 509 F. Supp. 2d at 1285 (quoting Ginsberg, 863 So. 2d at 162). Ginsberg, however, neither affirmed Compupay nor discussed the applicability of its holding outside of the context of the duty to defend claims of sexual harassment.

matter, and that because no publication had been alleged, the allegations of offensive touching were not covered.  Penzer, 509 F. Supp. 2d at 1284–85 (citing Compupay, 654 So. 2d at 948–49).

Compupay does not appear to be directly on point, as it involved whether there was a duty to defend sexual harassment claims under a policy provision providing coverage for "the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy."  Compupay, 654 So. 2d at 946 n.2.  As the allegations at issue in Compupay involved only the physical invasion of the complainant's person, there were no "allegations of publication which would bring the claim within this provision."  Id. at 949 (emphasis added).  As the case involved a different type of conduct, the court had no occasion to consider whether the publication of unsolicited material into a recipient's private domain violates that person's right to privacy based on interests in seclusion.

E.    Exclusions

Transportation also argues that policy exclusions prevent coverage here. Provisions excluding or limiting the liability of the insurer are construed even more strictly against the insurer than those provisions that allow coverage, Auto-Owners, 756 So. 2d at 34, and "the burden of proof rests on the insurance

12

company to demonstrate that the coverage was inapplicable," U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1065 (Fla. 1983). If exclusions are reasonably susceptible to more than one meaning, they are considered ambiguous and are to be construed in favor of the insured. Swire Pac. Holdings, 845 So. 2d at 165.

The relevant exclusions in the policy exclude coverage for "advertising injur[ies]" "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured," and "arising out of . . . [b]reach of contract, other than misappropriation of advertising ideas under an implied contract." (Policy at 5–6.) Transportation argues that Florida public policy also prohibits coverage for intentional misconduct and punitive damages, both of which it alleges are at issue here. None of these exclusions or defenses were addressed by the district court, in view of its decision that no coverage was available under the "advertising injury" provision, but they may provide alternative grounds for affirming the district court's entry of summary judgment and final judgment in favor of Transportation on the issue of coverage. See Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992) ("[T]his court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by

13

the district court."). Transportation, however, has not met its burden to prove that coverage is inapplicable under any of the policy exclusions or other defenses.

Transportation first alleges that coverage is excluded because Penzer's claims actually arose from Southeast's willful violation of a penal statute, namely, Fla. Stat. § 365.1657.[7] The exclusion easily and logically can be read as limited to the statute giving rise to liability, thus Transportation's broader reading does not control. Transportation most likely does not argue this exclusion arose from the TCPA, the statute giving rise to liability here, because most courts have found that the TCPA is not a penal statute. See, e.g., Melrose Hotel, 432 F. Supp. 2d at 509 n.10; Hooters of Augusta, Inc. v. Am. Global Ins. Co., 272 F. Supp. 2d 1365, 1375–76 (S.D. Ga. 2003); W. Rim, 269 F. Supp. 2d at 848–49; Terra Nova, 869 N.E.2d at 574–75.

Transportation also alleges that the breach of contract exclusion applies because Southeast breached a contract with Nextel by failing to get Nextel's

---

[7] Section 365.1657 provides that:

(1) It is unlawful for any person to use a machine that electronically transmits facsimiles of documents through connection with a telephone network to transmit within this state unsolicited advertising material for the sale of any real property, goods, or services.

(2) The Attorney General may bring an action to impose a civil penalty and to seek injunctive relief. The civil penalty shall not exceed $500 per violation. Each transmission shall be considered a separate violation.

approval before sending the facsimile advertisements and by sending facsimiles

containing Nextel's trademark, as prohibited by their "Authorized Representative

Agreement." Penzer maintains that the breach in question must have occurred

between Southeast and the party claiming injury, i.e. Penzer, and that because

there was no contractual relationship between the parties, no breach has occurred.

The language of the breach of contract exclusion does not clearly indicate who the

applicable contracting parties must be for the exclusion to apply, but Penzer's

reading is reasonable and, in fact, the most obvious one. Because Transportation

has not demonstrated that its broad reading of the exclusion is the only reasonable

one and because exclusions must be strictly construed against the insurer, this

exclusion does not prevent coverage.

Florida's public policy against insuring one's own intentional misconduct

also does not apply here.[8] This public policy exclusion is not applicable under

Florida law "[w]here liability is not predicated on intent." Travelers Indem., 889

So. 2d at 794. Numerous courts have determined that the TCPA does not require

intent, except when awarding treble damages. See, e.g., Universal Underwriters,

---

[8] Florida has a two-factor test for determining whether a policy is against public policy, though neither party evaluates these public policy exclusions under it. The test "looks to whether the type of conduct for which liability is imposed would be 'encouraged' if one could insure against the risk of liability arising from such conduct" and "whether the purpose served by the imposition of liability for certain conduct is 'to deter wrongdoers or compensate victims.'" Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 794 (Fla. 2004) (citations omitted).

401 F.3d at 882 ("[I]ntent is not a prerequisite to liability under the [TCPA].");

Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004) ("The TCPA is essentially a strict liability statute" where liability can be found for erroneous unsolicited faxes). Thus, this public policy exclusion does not apply.

Finally, Florida's public policy prohibiting insuring against punitive damage liability does not apply. The TCPA provides for $500 statutory damages and for treble damages for willful or knowing conduct, 47 U.S.C. § 227(b)(3), which is an indication that the statutory damages were not designed to be punitive damages. Indeed, other courts have found that the TCPA's statutory damages are not punitive. See, e.g., Universal Underwriters, 401 F.3d at 881 ("[I]t is clear that the fixed amount [of the TCPA] serves more than purely punitive or deterrent goals" and instead, provides "an incentive for private parties to enforce the Act"); Terra Nova, 869 N.E.2d at 576 (TCPA statutory damages are not punitive but rather are intended to "liquidate uncertain actual damages and to encourage victims to bring suit") (citation and quotations omitted). But see Kaplan v. Democrat & Chronicle, 698 N.Y.S.2d 799, 800–01 (N.Y. App. Div. 1999) (TCPA damages are punitive as actual damages need not be proven to recover). Further,

16

punitive damages under Florida law "must be based on behavior which indicates a wanton disregard for the rights of others." U.S. Concrete, 437 So. 2d at 1064.

Neither the policy exclusions nor Florida public policy lead to denial of coverage. Accordingly, an unsettled issue of Florida law as to insurance policy coverage controls the disposition of this case. A pure legal question of the interpretation of widely used language in commercial liability insurance is at issue. "Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law." Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005). There appear to be no controlling Florida Supreme Court law and no intermediate appellate court decisions on point. Thus, we certify the issue to the Florida Supreme Court.

### III. CERTIFICATION TO THE FLORIDA SUPREME COURT

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE V, SECTION 3(B)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

We certify the following question to the Supreme Court of Florida for determination under Florida law:

DOES A COMMERCIAL LIABILITY POLICY WHICH PROVIDES COVERAGE FOR "ADVERTISING INJURY," DEFINED AS "INJURY ARISING OUT OF . . . ORAL OR WRITTEN PUBLICATION OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY," SUCH AS THE POLICY DESCRIBED HERE, PROVIDE COVERAGE FOR DAMAGES FOR VIOLATION OF A LAW PROHIBITING USING ANY TELEPHONE FACSIMILE MACHINE TO SEND UNSOLICITED ADVERTISEMENT TO A TELEPHONE FACSIMILE MACHINE WHEN NO PRIVATE INFORMATION IS REVEALED IN THE FACSIMILE?