[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10770

_____

MONY LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

*versus*

BERNARD R. PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-02031-WFJ-TGW

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This appeal requires us to answer two basic questions: first, whether an insurer can bring a claim for unjust enrichment when there is an express insurance contract covering the same subject matter; and second, whether, under the peculiar circumstances of this case, the failure of the district court to interpret an ambiguous term in an insurance contract is sufficient reason to vacate a jury verdict on a breach of contract claim. The lawsuit arises out of a dispute concerning a disability insurance contract between MONY Life Insurance Company and Bernard Perez, an ophthalmologist, entered in 1988. Perez was diagnosed with throat cancer in 2011, was determined to be unable to work, and thus began receiving monthly disability benefits from MONY in August 2011. Sometime thereafter, MONY determined that Perez may have been dishonest in submitting basic information related to his disability and his financial condition, and, in February 2018, it discontinued making further payments to the insured.

MONY sued Perez for unjust enrichment in the Middle District of Florida and Perez counterclaimed for breach of contract. After a nine-day trial, during which extensive evidence established Perez's deceitful conduct, a jury returned a verdict in favor of MONY on its unjust enrichment claim, awarding it $388,000. The jury also rejected Perez's breach of contract counterclaim. Under controlling Florida law, because there was an express insurance

contract covering the same subject matter as the unjust enrichment claim, we hold that the district court erred first in sending this claim to the jury, and then in entering final judgment for MONY on its unjust enrichment claim, and, therefore, we set aside the jury's verdict on that claim. As for Perez's counterclaim for breach of contract, however, the evidence is more than sufficient to establish that Perez was untruthful in submitting his proofs of loss, and therefore we affirm the jury's verdict against Perez on his breach of contract counterclaim. Finally, we can discern no abuse of discretion in a series of challenged evidentiary rulings, and in the district court's denial of an application for sanctions.

## I.

### A.

In 1987, ophthalmologist Bernard R. Perez formed a for-profit medical practice in Tampa, Florida. Soon thereafter, in June 1988, Perez applied for, and, in September 1988, was issued a disability insurance policy by MONY Life Insurance Company. Perez merged his ophthalmology practice with his brother Don Perez's practice in 1994, creating a successor business entity, Perez & Perez. Each of the brothers owned 50 percent of the business. After the merger was consummated, Perez & Perez became responsible for paying Bernard Perez's disability insurance premiums to MONY.

In 2011, Perez was diagnosed with squamous cell carcinoma in the head and neck area. He underwent successful surgery in June 2011, and was subsequently treated with proton beam

radiation therapy in July and August 2011. Since his treatment, Perez has been cancer-free. Perez submitted a disability claim form to MONY in July 2011 asserting that he was unable to work, and in August 2011 he began receiving monthly disability benefits. Perez and his physician Dr. Boothby claimed that Perez had sustained lingering health issues since his cancer treatment that affected his ability to work.

MONY's disability insurance policy provides income replacement benefits when an insured is unable to perform his occupation ("Incapacity"), or unable to perform at the amount previously performed ("Residual Income Loss") due to injury or sickness. For each month of Incapacity, an insured will receive full, basic monthly income. To receive benefits under the Residual Income Loss provision, an insured must establish "a Percent of Earnings Loss of 20% or more due solely to the Injury or Sickness," and if an insured's Earnings Loss from reduced workload is greater than 75%, he will receive full, basic monthly income. In August and September 2011, MONY paid Perez his full, basic monthly income under the Incapacity provision. For nearly every month from October 2011 to January 2018 (except for July and August 2015), Perez claimed 100 percent Residual Income Loss under the policy, and, accordingly, continued to receive full, basic monthly disability income ($13,137 per month).

The policy also differentiates the calculation of earnings depending on whether an insured is self-employed or not. For individuals "self-employed in an incorporated business," compensation

includes "salary, commissions, bonuses and Business Income." For those who are "not self-employed," compensation includes "salary, wages, fees, commission, and bonuses." "Business Income" includes one's "share of the profit from the business" that one owns.

In September 2011, Perez claimed to a MONY representative that he was an owner of Perez & Perez, and that he owned a "little less than 50%" of the business. He made this representation again when he filed a claim for disability benefits later that month. MONY paid Perez disability benefits in reliance on Perez's assertion that he was "self-employed"; the calculation of his total compensation included "Business Income" from his claimed ownership interest in Perez & Perez. When he submitted his "Current Earnings" to MONY, Perez subtracted business expenses, which lowered his reported total compensation, and in turn, increased his Earnings Loss and the amount of his monthly disability payments.

In order to be eligible to receive monthly disability benefits, the insurance company required Perez to submit "written proof of loss." The policy required that "[u]pon receipt of acceptable proof of loss, [MONY would] pay all benefits due [Perez] at the end of each month while the benefit period continue[d]." The policy did not define the term "acceptable proof of loss," and it contained no provision allowing the insurer to claw back funds improvidently paid to the insured.

Almost every month between October 2011 and January 2018, Perez submitted financial information establishing an "Earnings Loss" of greater than 75%. Thus, for example, in October

2011, he told MONY that he had only been working in the office for the "past few weeks a few hours per day," again on account of the continuing effects of his illness. Perez also submitted evidence from his physician, Dr. Boothby, that he had "chronic fatigue" that prevented him from performing his job in the manner he had done before his cancer diagnosis. The physician statements submitted by Dr. Boothby did not show any improvement in Perez's health over the years, notably indicating in 2012, 2013, 2014, 2015, and 2017 that Perez's condition was "[u]nchanged," and that he could only stand for 1 hour and walk 10 blocks.

In May 2012, however, MONY grew suspicious of Perez's claims and began to investigate. By the time of the trial, some ten years later, MONY believed that Perez had substantially understated the number of hours he worked and overstated the nature and extent of his physical ailments after he had been treated. At trial, MONY asserted that Perez had repeatedly lied in his proofs of loss, thereby inflating the disability benefits he received.

Among other things, Perez failed to inform MONY that in 2010, "he had sold his 50 percent practice to his brother, Don, during his divorce." On direct examination, Perez's accountant, John Magliano, acknowledged that "in 2010 [he] swore under oath that Dr. [Bernard] Perez had sold his interest in Perez & Perez." Moreover, while Bernard Perez was listed as a director of Perez & Perez in the 2008 and 2009 annual company reports, his name was removed from the reports in 2010 and thereafter. Having sold his interest in the medical practice, MONY's calculation of Perez's

benefits under the "self-employed" provision was substantially in-accurate because Perez & Perez's "Business Income" (including its business expenses) should not have been calculated as part of Perez's total compensation.

MONY also discovered that in August 2011, Bernard Perez had formed a new company Perez Eye Center, P.L. with his brother Don Perez, and that both brothers continue to jointly own the new company -- an entity Perez never told MONY about. This information provided further evidence that Perez had sold his stake in Perez & Perez, and also established that Perez likely had additional earnings that he never disclosed to MONY.

In any event, even if Perez had maintained some ownership interest in Perez & Perez after 2010, at trial, MONY convincingly demonstrated that many of the business expenses submitted by Perez were untruthful. For example, in 2010, Perez suddenly began paying his sister, Maggie Whidden, a management fee in addition to her W-2 wages. As the district court pointed out, her annual salary of $135,000 as an office manager exceeded that of even the ocular surgeons. The record also established that Perez's automobile expenses rose sharply from $5,000 in 2010 to $42,000 in 2012. MONY began to investigate whether Perez's purported business expenses were in fact personal in nature, including, among others, the legal fees he paid his divorce attorneys. Concerned about these suspicious business expenses, MONY submitted various financial questions to Perez about his medical practice in 2012; most of the questions were left unanswered.

Moreover, MONY established that Perez was deceptive in reporting how many hours he worked.  Thus, for example, in a 2016 report by MONY's physician Dr. Brodner, Perez "admitted to working 6–7 clinic hours per day and performing 3–5 hours of surgery per week."  Contrary to Dr. Boothby's claims that Perez's post-cancer health issues substantially limited his ability to work as an ophthalmologist, Dr. Brodner concluded that "[r]easonable functional limitations do not exist," and that "Dr. Perez's xerostomia [dry mouth] does not restrict his activities as an Ophthalmologist."  MONY established that by underreporting the hours he worked, Perez was able to inflate the benefits he received under the Residual Income Loss calculation.

MONY also offered evidence that Perez was deceitful in describing the nature and extent of his residual illness.  Dr. Boothby's assessments concluded that Perez could only stand 1 hour, walk 10 blocks, and lift 60 pounds.  But, in sharp contrast, the testimony from his ex-girlfriend described Perez's physical abilities in a manner completely at odds with Dr. Boothby's assessment.  From 2016 to 2020, she testified, that in the course of their relationship she observed Perez unload 85 bags of mulch, garden almost every day, and indeed walk some 10 miles a day during a trip to New York City and walk 40 miles during a weeklong trip to Madrid.  She further explained that Perez participated in many physical activities, including boating on most Sundays, taking lengthy stand-up paddleboard trips sometimes exceeding three miles, and skiing on three consecutive days in Aspen.  Perez drove racecars and ATVs

and rode horses from 2015 onwards as well.  Perez also traveled the world during their relationship, including trips to the Caribbean and Europe.  This testimony undermined Dr. Boothby's repeated assessments that Perez had a limited ability to stand and walk, and that "chronic fatigue" disabled him.  By vastly overstating the extent of his "Injury or Sickness," and thereby his "Earnings Loss," MONY concluded that Perez received substantially inflated disability benefits from the insurance policy.

In light of these discoveries, MONY first attempted to perform an independent forensic financial audit of Perez's medical practice in November 2016.  In May 2017, MONY wrote to Perez of its intention to conduct an on-site audit of his medical practice using the outside accounting firm Nawrocki Smith.  Perez did not respond, and MONY threatened to discontinue paying future benefits if he did not comply with a financial audit.  In December 2017, Perez's counsel asked MONY to identify the provision of the insurance policy that required compliance with an audit.  MONY responded: "While the Policy does not specifically mention this method of obtaining the acceptable Proof of Loss, logically, this appears to be the only means under which Dr. Perez will be able to provide it."  Moreover, MONY's monthly claims forms (though not part of the insurance contract) expressly stated: "We may periodically require verification of the Current Earnings you report.  Verification may be by an audit at our expense, or by requesting copies of your tax returns from the Internal Revenue Service, or by other similar means."  Perez nonetheless refused to comply with

the audit and MONY finally stopped the payment of benefits beginning in February 2018.

### B.

Perez first sued MONY in Hillsborough County, Florida state court seeking a declaratory judgment that MONY was not entitled to condition its disability benefits on Perez's agreement to submit to a financial audit. MONY removed the action to the federal district court in the Middle District of Florida, whereupon Perez voluntarily dismissed his lawsuit. Perez then filed a second state court action in Pinellas County, Florida, this time alleging that MONY had breached the insurance policy by withholding benefits in the month of February 2018 because Perez had failed to comply with the audit request. MONY answered the complaint, interposed affirmative defenses, but filed no counterclaims.[1]

In August 2019, MONY brought the instant lawsuit in the Middle District of Florida, seeking declaratory relief that it was entitled to condition Perez's benefits on his compliance with an audit. MONY amended its complaint three times. In its third amended (and operative) complaint, MONY asserted claims for declaratory relief, unjust enrichment, and restitution. Perez's answer included the affirmative defenses of voluntary payment and waiver, as well as counterclaims for breach of contract, statutory bad faith, fraud, and a violation of the Employment Retirement Income Security

---

[1] The Florida state court case in Pinellas County has been stayed by the parties' agreement.

Act ("ERISA").  MONY moved to amend its complaint to add a claim for fraud, alleging that Perez had no ownership in the ophthalmology practice, contrary to his repeated representations, and that he had thereby received inflated benefits.  But the district court denied the motion, observing that this "suit involves disability insurance and should not be expanded.  The case is getting fairly old, and has been the subject of several amendments and a number of extensions.  This matter must work towards resolution, not expansion."

MONY then moved for summary judgment on the first three of Perez's counterclaims.  Perez in turn moved for summary judgment on all three claims in MONY's complaint and on his first counterclaim for breach of contract.  The district court denied each of the parties' motions for summary judgment.  The court ruled that any trial on Perez's statutory bad faith counterclaim would occur, if at all, after a trial on unjust enrichment (which included restitution) and breach of contract.  The court explained to Perez's counsel regarding the statutory bad faith counterclaim, "we're not getting into that until you prove breach of contract."  The district court also determined that MONY's insurance policy was not subject to ERISA and dismissed Perez's ERISA counterclaim.

Before trial, Perez filed several motions in limine.  First, Perez moved to exclude evidence and testimony concerning his ownership of the medical practice.  Second, Perez moved under Federal Rule of Civil Procedure 37 to exclude previously undisclosed evidence, arguing that exhibits taken from his ex-girlfriend's phone

and MONY's theory and calculation of damages violated Federal Rule of Civil Procedure 26. Finally, Perez moved in limine to exclude purportedly untimely expert opinions offered by Dr. Brodner and MONY's forensic accountant, John Hoffman.

The district court denied Perez's first motion, finding MONY's evidence to be "relevant to Dr. Perez's alleged underreporting of income and not unfairly prejudicial." The court also denied Perez's second motion, noting that Perez had "personal knowledge of the otherwise undisclosed deposition evidence and the facts underlying MONY's theory of damages," thereby barring exclusion under Rule 37(c)(1). But the court granted Perez's motion to exclude untimely testimony proffered by Dr. Brodner and John Hoffman from MONY's case-in-chief, allowing them to "only testify as rebuttal experts." At trial, however, the district court reversed its decision to declare Dr. Brodner and John Hoffman as only rebuttal experts and permitted them to testify in full.

During the course of the trial, the district court granted judgment as a matter of law in favor of MONY on Perez's fraud counterclaim (but not the breach of contract counterclaim) under Federal Rule of Civil Procedure 50.

After a nine-day trial, the jury ultimately determined that Perez had been unjustly enriched and that MONY did not breach the insurance contract. Accordingly, the jury awarded MONY $388,000 in damages accrued between August 2015 and January 2018. (The district court had determined that the claims between October 2011 and August 2015 were time-barred). In its judgment

affirming the jury's verdict, the district court awarded MONY $448,930.06 (including prejudgment interest) and found that MONY's declaratory judgment claim had become moot. In its final judgment entered in favor of MONY, the court also dismissed with prejudice Perez's counterclaim "in its entirety," which encompassed the statutory bad faith claim, noting that "Perez shall go hence without day."

Perez then moved for a renewed judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that under Florida law, an unjust enrichment claim cannot lie when there is an express contract between the parties covering the same subject matter. Perez also sought a new trial under Federal Rule of Civil Procedure 59, arguing that the district court had fatally erred in failing to instruct the jury on the meaning of "acceptable proof of loss" in the insurance policy. The district court denied both motions.

Perez timely filed this appeal.

## II.

### A.

"We review a district court's ruling on a renewed motion for judgment as a matter of law *de novo*, considering the evidence and the reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Redding v. Coloplast Corp.*, 104 F.4th 1302, 1308 (11th Cir. 2024) (citation and internal quotation marks omitted). We also review a district court's denial of a motion for a new trial for abuse of discretion. *Lamonica v. Safe*

*Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013). And we review for abuse of discretion a district court's refusal to give a requested jury instruction. *Id.* at 1309.

We likewise review a district court's refusal to grant sanctions under Federal Rule of Civil Procedure 37 for abuse of discretion. *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985). And we review for abuse of discretion a district court's decision to admit certain evidence or expert testimony. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).

"[A] federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022). Under Florida's choice-of-law rule, the law of the jurisdiction where the contract was executed generally governs. *See Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004). Here Perez executed the policy in Florida.

"Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); *see also Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) (holding that "a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists" that covers the same topic); *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an

express contract exists concerning the same subject matter."); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So. 2d 518, 520 (Fla. 3d DCA 1975) ("[A]n action seeking to enforce an express contract and also . . . accomplish the same purpose under quantum meruit is not available."); *Hazen v. Cobb*, 117 So. 853, 858 (Fla. 1928) ("The law will not imply a contract where a valid express one exists."); *Glob. Network Mgmt., LTD v. CenturyLink Latin Am. Sols., LLC*, 67 F.4th 1312, 1317 (11th Cir. 2023) ("When a contract addresses a certain topic, that topic cannot be the subject of a claim for a contract implied in law.").

MONY's unjust enrichment claim must fail under Florida law because it covers the same subject matter as the insurance contract. In its operative complaint, MONY alleged that Perez was "unjustly enriched by the receipt of money from MONY resulting from his claims for Residual Income Loss benefits for periods in which he was not entitled to those benefits under the terms of the Policy." MONY added that Perez "accepted and voluntarily retained the disability benefit payments conferred by MONY under circumstances in which it would be inequitable for him to retain those benefits." In so doing, MONY made it abundantly clear that Perez inequitably retained disability benefits that were paid to him after he submitted claims *under the terms of the insurance contract*. The contract states that "[u]pon receipt of acceptable proof of loss, [MONY] will pay all benefits due [to Perez] at the end of each month while the benefit period continues." The contract also provides that it constitutes the entire agreement between the parties. MONY's claim for unjust enrichment falls squarely within the

ambit of the express contract and cannot lie under Florida law. *See Diamond "S" Dev. Corp*, 989 So. 2d at 697; *Ocean Commc'ns, Inc.*, 956 So. 2d at 1225; *Kovtan*, 449 So. 2d at 1; *Zeskind*, 315 So. 2d at 520; *Hazen*, 117 So. at 858.

Notwithstanding the clarity of Florida's case law on this point, MONY says that "the Policy provided no method by which MONY could recoup monies Perez received as a result of his improper actions during his claim, including misrepresenting his medical condition and improperly manipulating his financial information." Even Perez acknowledges that "[t]he Policy contained no feature allowing the insurer to . . . ask for that payment back if and when it changed it[s] mind." But the fact that the insurance contract, which, after all, was drafted by MONY, does not contain a clawback provision allowing for the disgorgement of overpayments made to Perez does not alter Florida's law on this basic point. The parties bargained about the subject matter contained in this insurance contract. MONY agreed to make cash payments for income lost on account of illness or injury upon receipt of acceptable proof of loss. And the contract addresses misstatements by Perez in two places -- the "Misstatement of Age" provision and the "Incontestable" provision -- without providing for a clawback of benefits paid due to misstatements or misrepresentations. MONY's failure to include a clawback provision does not allow it to contravene or unsettle what is clearly established law in Florida, *see, e.g.*, *Glob. Network Mgmt., LTD*, 67 F.4th at 1317–18 (collecting

23-10770                Opinion of the Court                17

cases), and it does not allow the insurer to rewrite the terms of the agreement.[2]

Although MONY is left without an equitable cause of action here, MONY could have done two things differently. First, it could have included a clawback provision in its contract, which, as MONY's counsel acknowledged at oral argument, would not have been forbidden by the Florida insurance code. Second, MONY could have sued Perez in tort for fraud or misrepresentation. *See, e.g., HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So. 2d 1238, 1240 (Fla. 1996) (holding that a "cause of action for fraud in the inducement is an independent tort and is not barred by the economic loss rule"); *cf. Gallon v. Geico Gen. Ins. Co.,* 150 So. 3d 252, 255 (Fla. 2d DCA 2014) ("[T]he terms of an insurance policy do not preclude an action against the insurer or its agent where the agent misrepresents the coverage of the insurance contract and the insured reasonably relies on the misrepresentation to his detriment.") (quoting *Martin v. Principal Mut. Life Ins. Co.,* 557 So. 2d 128, 129 (Fla. 3d DCA 1990)). While MONY attempted to amend its complaint (for the fourth time) to assert a claim for fraud, very late in the day of this protracted litigation, the district court exercised its considerable discretion in denying the motion in the interests of timing and

---

[2] We said in *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab,* 739 F.3d 579 (11th Cir. 2013) (per curiam), that if a person "accepts and retains benefits that [he] is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment." *Id.* at 584. But *Silver Star* does not control here because in that case there was no contract (and no privity of contract) between the insurer and the defendant. *See id.*

efficiency. And, notably, MONY has not appealed the denial of its motion to amend in this court.

We, therefore, conclude that the district court erred under Florida law in allowing MONY's unjust enrichment claim to move forward. This claim should not have been sent to the jury. Accordingly, we set aside the jury verdict in favor of MONY on its unjust enrichment claim and, on remand, direct the district court to vacate its judgment awarding MONY $448,930.06.

## B.

As for Perez's counterclaim asserting that MONY breached the contract, however, we are not persuaded by Perez's argument that because the district court erred in failing to interpret the term "acceptable proof of loss" in the insurance contract, the jury's verdict for MONY must be reversed.

"It is well settled that the construction of an insurance policy is a question of law for the court." *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). Florida law is crystal clear that its courts *must* interpret ambiguous policy provisions found in insurance contracts. *See Wash. Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013); *Zautner v. Liberty Mut. Ins. Co.*, 382 So. 2d 106, 107 (Fla. 3d DCA 1980) (holding that because an insurance contract's provision was ambiguous, "[t]he trial court was therefore required, as a matter of law, so to interpret the policy.").

"Policy language is considered to be ambiguous if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *State*

23-10770                Opinion of the Court                19

*Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011) (citation modified).  The Florida Supreme Court has held that "an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer." *Ruderman*, 117 So. 3d at 950; *see also Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1306 (11th Cir. 2008) (holding that policy language "[a]mbiguities are construed against the insurer").  Here, the term "acceptable proof of loss" is unclear at least in so far as to whether it requires an insured to comply with an insurer's audit demand.  The insurance contract offers no definition about the meaning of the term.

Perez asked the district court to interpret the term "acceptable proof of loss" to exclude MONY's demand that the insured was required to comply with its audit request, so that his failure to comply could not be a basis for MONY to stop paying the disability payments.  Perez made this request many times, including at summary judgment, again in proposed jury instructions, and then in motions filed under Rules 50 and 59 after trial.  And in opposing Perez's proposed jury instructions, even MONY suggested that "[c]ontract interpretation is a question of law for the Court in the first instance, not the jury."

But each time, the court declined to interpret the term, instead observing: "Since [MONY has] been unable to define for me what acceptable proof of loss is and the statute does not define what acceptable proof of loss is, I conclude that it is

ambiguous. . . . It is an important term in this lawsuit. It's undefined."[3] The court concluded: "It's up to the jury, it's ambiguous. They're going to decide, okay. And they are going to construe it against [MONY] because [MONY] wrote it and [MONY] didn't define it." The court instructed the jury that an ambiguous insurance policy provision is to be "construed in favor of the insured and against the drafter."

The district court erred in failing to interpret an ambiguous term found in the insurance contract, leaving it to the jury to construe what it meant. Under Florida law, it is neither the parties' nor the jury's role to interpret ambiguous contract provisions found in an insurance policy, but rather the court's. *Jones*, 463 So. 2d at 1157; *Ruderman*, 117 So. 3d at 948; *Zautner*, 382 So. 2d at 107.

Nevertheless, our inquiry does not end there. While the district court erred, we find that this error is not reversible because it was harmless to the outcome of Perez's breach of contract counterclaim. Federal Rule of Civil Procedure 61 provides that:

---

[3] In refusing to define "acceptable proof of loss" when denying Perez's motion for summary judgment, the district court accurately observed that "[t]here is no lucid, controlling Florida law on the precise contractual point." The phrase "acceptable proof of loss" does not appear in Florida case law, and the Eleventh Circuit opinion cited by Perez interprets a similar term only under Alabama law. *See Lee v. Prudential Ins. Co.*, 812 F.2d 1344, 1346 (11th Cir. 1987) (holding that "due proof of loss" is "such a statement of facts, reasonably verified, as, if established in court, would prima facie require payment of the claim") (citation omitted). But the fact that Florida's courts have not defined the term did not obviate the district court's obligation to interpret an admittedly ambiguous contractual provision.

> Unless *justice* requires otherwise, no error . . . by the
> court or a party . . . is ground for granting a new trial,
> for setting aside a verdict, or for vacating, modifying,
> or otherwise disturbing a judgment or order. At every
> stage of the proceeding, the court must disregard all
> errors and defects that do not affect any party's *sub-*
> *stantial* rights.

Fed. R. Civ. P. 61 (emphases added); *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). In deciding whether a party's substantial rights are affected, we've considered whether the purported errors "have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." *Frazier*, 387 F.3d at 1266 n.20 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)); *see also* *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1253–54 (11th Cir. 2020) (noting that the central question in harmless error review is whether the complaining party's "substantial rights to obtain reversal and a new trial" were affected by the error).

Based on the peculiar circumstances of this case, the district court's failure to interpret the term "acceptable proof of loss" did not affect Perez's substantial rights.

The jury was instructed that for Perez to prevail on his breach of contract counterclaim, he had to prove -- among other things -- that he "did all or substantially all of the essential things which the contract required him to do or that he was excused from

doing those things," and "all conditions required by the contract for MONY's performance had occurred."[4]  And MONY's counsel agreed in part at closing that Perez was not truthful when he submitted his claims.

Regardless of whether the jury interpreted the term "acceptable proof of loss" to include a requirement to comply with an audit, the evidence adduced at trial overwhelmingly established that Perez repeatedly submitted false and misleading information material to his proofs of loss.  As a result, Perez could not prevail on his breach of contract counterclaim under Florida law because he did not establish that he "did all, or substantially all, of the essential things which the contract required," or that "all conditions required by the contract for [MONY's] performance had occurred," by failing to submit accurate proofs of loss.  *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508–09 (Fla. 2d DCA 2020) (quoting Fla. Std. Jury Instr. (Cont. & Bus.) 416.4).

Even if the district court had adopted Perez's view of what constitutes "acceptable proof of loss" in a disability claim, it is clear

---

[4] The district court's complete jury instruction on Perez's breach of contract counterclaim read this way: "To recover money from MONY for breach of contract, Dr. Perez must prove all the following: One, Dr. Perez and MONY entered into a contract.  Two, Dr. Perez did all or substantially all of the essential things which the contract required him to do or that he was excused from doing those things.  Three, all conditions required by the contract for MONY's performance had occurred.  Four, MONY failed to do something essential which the contract required it to do or MONY did something which the contract prohibited it from doing and that prohibition was essential to the contract.  And, five, Dr. Perez was damaged by that failure."

that Perez's proofs of loss could not have been "acceptable" because he repeatedly lied in the disability information he submitted. The vast majority of the trial concerned Perez's failure to be truthful in his proofs of loss. Among other things -- the evidence established that he was dishonest about his ownership in Perez & Perez and its business expenses, he was deceitful about the number of hours that he worked as an ophthalmologist, and he was dishonest about the nature and extent of his physical injuries. The evidence revealed that Perez's submissions could not have constituted "acceptable proof of loss" by any definition, including the one put forth by Perez.

The evidence of Perez's dishonest conduct so pervaded the trial that the jury could not readily have found for Perez on his breach of contract counterclaim, while at the same time having found for MONY on the unjust enrichment claim, regardless of how the jury interpreted the term "acceptable proof of loss." As we see it, MONY's unjust enrichment claim and Perez's breach of contract counterclaim are mirror images of one another -- since the jury found that Perez was unjustly enriched, it could not have found that MONY breached the insurance contract by halting payment for the same reason.

Thus, we will not disturb the jury verdict -- a verdict that is "clothed with a presumption of regularity" -- on the breach of contract counterclaim. *Republic Servs. of Fla., L.P. v. Poucher*, 851 So. 2d 866, 869 (Fla. 1st DCA 2003).

## C.

Finally, Perez argues that we "should find that the district court abused [its] discretion in refusing to grant Rule 37 sanctions, in refusing to grant a new trial based on MONY's sanctionable conduct, and in allowing Dr. Brodner to testify at all." We remain unpersuaded.

Rule 26 requires a disclosing party, "without awaiting a discovery request," to provide to the other parties a copy of "all documents . . . [it] may use to support its claims or defenses" and "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(ii)–(iii). Under Rule 37, "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). And if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, Perez moved for Rule 37 sanctions against MONY for failing to comply with Rule 26, but the district court found admission of the previously undisclosed evidence "harmless" and thus denied the motion.

We can discern no abuse of discretion in this determination. While Perez suggests that MONY improperly delayed disclosure of evidence concerning his ownership of the ophthalmology practice, the record shows that MONY requested this information from

Perez many times and to no avail, and did so well before the trial began. In fact, Perez's counsel suggested that MONY "go to the public record" and "knock themselves out rummaging around" this record. And that is exactly what MONY did -- it obtained public records concerning Perez's divorce proceedings and introduced them as evidence to show that Perez underreported his income by claiming ownership in the medical practice despite having sold his stake. Perez even addressed these divorce records in a deposition before trial, so he was aware that MONY had them. As a result, any delay related to the disclosure of this information was caused by Perez, and regardless, its use in trial was harmless since Perez was well aware of what was contained in the public records that MONY had uncovered.

We need not address Perez's Rule 26 challenge to MONY's theory of damages on its unjust enrichment claim because we have already set it aside for the reasons we have detailed in Section II.A.

We are also unpersuaded by Perez's claim that MONY used previously undisclosed photographs and messages from his ex-girlfriend's phone during his deposition, and that this evidence should not have been introduced at trial. MONY first produced this evidence one month before the discovery cutoff in supplemental Rule 26 disclosures to Perez, which undermines his argument that this information was previously undisclosed at his deposition. And Perez did not object to the evidence on Rule 26 grounds until eight months after the discovery cutoff. Thus, the record does not reflect that MONY violated Rule 26's mandate of timely disclosures in a

manner that would warrant Rule 37 sanctions.  Again, we can discern no abuse of discretion.

Finally, we find no merit in Perez's objection to the admission of testimony by Dr. Brodner, which he says was produced too late and was irrelevant.  There was no abuse of discretion.  We recognize that Dr. Brodner was disclosed as an expert by MONY on June 2, 2021, one month after the deadline for expert reports had passed.  But MONY's Rule 26 disclosure was made more than three months before the October 18, 2021 discovery cutoff.  Thus, for Rule 37 purposes, MONY's delay in disclosing Dr. Brodner's report was harmless since Perez had several months to conduct discovery, and in fact, Perez's counsel deposed Dr. Brodner on September 9, 2021.  Finally, we observe that it should have come as no surprise to Perez that Dr. Brodner would testify at trial, as the district court aptly recognized in denying Perez's motion to exclude Dr. Brodner.  As the trial court observed: "It wasn't exactly like it was a big surprise [MONY was] going to use these [experts]."

In short, the district court did not abuse its considerable discretion in refusing to grant Rule 37 sanctions against MONY, nor did it abuse its discretion in admitting the disputed evidence and testimony at trial.

★★★

Thus, we **SET ASIDE** the jury's verdict on MONY's unjust enrichment claim and direct the district court to **VACATE** the final judgment it entered for MONY on this claim.  We **AFFIRM** the

23-10770              Opinion of the Court                    27

jury's verdict and the district court's judgment against Perez on his breach of contract counterclaim, and **AFFIRM** the district court's evidentiary rulings.

**AFFIRMED IN PART, VACATED IN PART, AND RE-MANDED.**